1  YAR R. CHAIKOVSKY (SB# 175421)
   yarchaikovsky@paulhastings.com
2  PHILIP OU (SB# 259896)
   philipou@paulhastings.com
3  ANDY LEGOLVAN (SB# 292520)
   andylegolvan@paulhastings.com
4  JOSEPH J. RUMPLER, II (SB# 296941)
   josephrumpler@paulhastings.com
5  BERKELEY FIFE (SB# 325293)
   berkeleyfife@paulhastings.com
6  BORIS LUBARSKY (SB# 324896)
   borislubarsky@paulhastings.com
7  PAUL HASTINGS LLP
   1117 S. California Avenue
8  Palo Alto, California  94304-1106
   Telephone:  1(650) 320-1800
9  Facsimile:  1(650) 320-1900

10 Attorneys for Plaintiff
   APPLIED MATERIALS, INC.
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15 APPLIED MATERIALS, INC.,              CASE NO. 5:20-cv-05676-EJD

16          Plaintiff,                   **APPLIED MATERIALS, INC.'S
                                         MOTION FOR PRELIMINARY
17      vs.                              INJUNCTION TO ENJOIN DEMARAY
                                         LLC FROM PROCEEDING WITH
18 DEMARAY LLC,                          CUSTOMER SUITS DURING THE
                                         PENDENCY OF THIS ACTION**
19          Defendant.
                                         **Hearing Date: October 22, 2020
20                                       Hearing Time: 9:00 a.m.**

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION ................................................................................................. 2

4    II.     FACTUAL BACKGROUND ............................................................................... 3

5            A.     Demaray's Infringement Actions against Applied's Customers............................ 3

             B.     Applied's Declaratory Judgment Action against Demaray..................................... 4

6    III.    LEGAL ARGUMENT .......................................................................................... 7

7            A.     This Court Has Authority to Enjoin a Customer Suit Where the
                    Manufacturer's Action Has the Potential to Resolve Major Issues in the

8                   Customer Suits ...................................................................................................... 7

9            B.     This Action Is the First Filed Action Under the "First-to-File" Rule—Not
                    the Customer Suits—and Regardless, the "Customer Suit" Exception

10                  Applies ................................................................................................................ 14

11           C.     The Comparative Convenience of this District and the District Where the
                    Customer Suits Are Venued Favors This Action over the Customer Suits .......... 17

12

13           D.     There Are No Comity Concerns Due to the Procedural Posture of the
                    Customer Suits .................................................................................................... 18

14   IV.     CONCLUSION ................................................................................................... 20

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLIED'S MOTION FOR
PRELIMINARY INJUNCTION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Corydoras Techs., LLC*,
No. 1:19-cv-1095-RP, 2020 U.S. Dist. LEXIS 57969 (W.D. Tex. Apr. 2, 2020) ........... *passim*

*Codex Corp. v. Milgo Electronic Corp.*,
553 F.2d 735 (1st Cir. 1977) ...........................................................................................16, 17

*Corydoras Techs., LLC v. Best Buy Co.*,
No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578 (E.D. Tex. Mar.
16, 2020) ...............................................................................................................................19

*Demaray LLC v. Intel Corporation*,
No. 6:20-cv-634 (W.D. Tex. July 14, 2020) ..........................................................................3

*Demaray LLC v. Samsung Electronics Co., Ltd, et al.*,
No. 6:20-cv-636 (W.D. Tex. July 14, 2020). ....................................................................3, 4

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ............................................................................................11

*Finjan, Inc. v. Qualys Inc.*,
No. 4:18-cv-07229-YGR, 2020 U.S. Dist. LEXIS 65446 (N.D. Cal. Apr. 13,
2020) .....................................................................................................................................10

*In re Founds. Worldwide, Inc.*,
542 F. App'x 998 (Fed. Cir. 2013) .......................................................................................14

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ............................................................................... *passim*

*Google Inc. v. Rockstar Consortium U.S. LP*,
No. C 13-5933 CW, 2014 U.S. Dist. LEXIS 53757 (N.D. Cal. Apr. 17, 2014) ................15, 16

*Kahn v. Gen. Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) .........................................................................................8, 16

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) .................................................................................... *passim*

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
384 F.3d 1326 (Fed. Cir. 2004) .........................................................................................7, 19

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ............................................................................................14

APPLIED'S MOTION FOR
PRELIMINARY INJUNCTION

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)..................................................................................8

*Pacesetter Sys. Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982)........................................................................... *passim*

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
    463 F. Supp. 2d 949 (N.D. Iowa 2006)..................................................................7, 9

*Sillage LLC v. Kenrose Perfumes Inc.*,
    No. 8:14-cv-02043-CAS(RNBx), 2015 U.S. Dist. LEXIS 75965 (C.D. Cal.
    June 9, 2015) .............................................................................................................11

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011)............................................................................9, 16

*STC.UNM v. Intel Corp.*,
    754 F.3d 940 (Fed. Cir. 2014)...................................................................................11

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969).....................................................................................16

**Statutes**

35 U.S.C. § 271(a)...........................................................................................................10

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 22, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, Plaintiff Applied Materials, Inc. ("Applied") will and hereby does move for a preliminary injunction to enjoin Defendant Demaray LLC ("Demaray") from proceeding with patent infringement suits against Applied's customers—Intel Corporation ("Intel") and Samsung Electronics Co. Ltd., *et al.* ("Samsung")—during the pendency of this action. *See Demaray LLC v. Intel Corporation*, No. 6:20-cv-634 (W.D. Tex. July 14, 2020); *Demaray LLC v. Samsung Electronics Co., Ltd, et al.*, No. 6:20-cv-636 (W.D. Tex. July 14, 2020). The Motion is based on this Notice of Motion, the Points and Authorities, and on other such evidence as may be presented in connection with this Motion.

A preliminary injunction is expressly authorized and warranted under the circumstances of this case and the relevant law. Demaray sued two of Applied's customers—Intel and Samsung— for patent infringement based on products manufactured by Applied that were supplied to Intel and Samsung. While Demaray accused Applied's products, Demaray did not sue Applied. Therefore, to protect its customers, Applied initiated the instant declaratory judgment action to seek resolution of issues that would prove dispositive of the issues presented in Demaray's customer suits. The patent infringement, patent ownership, and patent license issues presented in this action will be dispositive of the majority—and potentially all—of the issues in Demaray's customer suits against Intel and Samsung. Under such circumstances, the interests of judicial efficiency, preventing needless waste of judicial and party resources, and preventing the possibility of conflicting decisions, a temporary halt of Demaray's customer suits is warranted.

APPLIED'S MOTION FOR
PRELIMINARY INJUNCTION

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**      <u>**INTRODUCTION**</u>

3            This declaratory judgment action involves a patent infringement, license, and ownership

4    dispute between Plaintiff Applied Materials, Inc. ("Applied") and Defendant Demaray LLC

5    ("Demaray") relating to two patents: U.S. Patent Nos. 7,544,276 and 7,381,657 (the "Asserted

6    Patents"). The instant action was necessitated because Demaray sued two of Applied's

7    customers—Intel and Samsung—in Texas for patent infringement based on the Asserted Patents

8    and based on products Applied manufactured and supplied to Intel and Samsung. Although

9    Demaray accused Applied's products in the customer suits, Demaray did not sue Applied for

10   infringement in Texas or elsewhere.

11           Therefore, to come to the aid of its customers, Applied filed the instant action seeking a

12   declaratory judgment against Demaray asserting that Applied's products do not infringe the

13   Asserted Patents. Additionally, Applied seeks a declaratory judgment that: (1) Applied's products

14   do not infringe the Asserted Patents because the rights of a named inventor in the Asserted Patent

15   were assigned to Applied by his employment agreement with Applied, making Applied at least a

16   co-owner that has not joined and will not join Demaray in alleging infringement of the Asserted

17   Patents; and (2)(a) Applied's products do not infringe because Applied holds a license to the

18   Asserted Patents based on a license agreement between Applied's affiliate, Applied Komatsu

19   Technology, Inc. ("Applied Komatsu"), and Demaray's predecessor company, Symmorphix, Inc.

20   ("Symmorphix"); or, alternatively, (2)(b) Applied's products do not infringe because the rights of

21   one or more of the named inventors to the Asserted Patents were assigned to Applied Komatsu by

22   their employment agreement, making Applied Komatsu at least a co-owner of the Asserted

23   Patents that has not joined and will not join Demaray in alleging infringement of the Asserted

24   Patents.

25           These actions present the quintessential "customer suit" scenario warranting a temporary

26   halt of Demaray's suits against Applied's customers while the instant action proceeds to the

27   merits on issues that will prove dispositive of the customer suits. *See Katz v. Lear Siegler, Inc.*,

28   909 F.2d 1459, 1464 (Fed. Cir. 1990) ("litigation against or brought by the manufacturer of

                                                      - 2 -                  APPLIED'S MOTION FOR PRELIMINARY
                                                                                                  INJUNCTION

1    infringing goods takes precedence over a suit by the patent owner against customers of the

2    manufacturer"); *see also Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982)

3    ("sound judicial administration" supports enjoining patentee "from proceeding with a first-filed

4    action against a customer for infringement when a second action has been filed by the

5    manufacturer against the patentee contesting the validity of the patent").

6         This action will dispose of the majority—if not all—of the issues in the customer suits,

7    not only by reason of a non-infringement judgment as to Applied's products, but also by reason of

8    case dispositive ownership and licensing issues presented in this action. For example, if Applied

9    has a license to the Asserted Patents, then Demaray cannot pursue infringement claims against

10   Applied by reason of the license, and Applied's customers are similarly protected under the

11   doctrine of patent exhaustion. In the interests of judicial efficiency, avoiding needless and

12   expensive parallel litigation, avoiding the prospect for conflicting determinations relating to the

13   same Asserted Patents and accused products, and because Applied, as the manufacturer of the

14   accused products, has the greater interest in defending its products, the Court should temporarily

15   enjoin Demaray from proceeding with the customer suits during the pendency of this action. Such

16   an order is in accord with Federal Circuit precedent and it is the most equitable, efficient, and

17   cost-effective manner to resolve all actions.

18   **II.    FACTUAL BACKGROUND**

19        **A.    Demaray's Infringement Actions against Applied's Customers**

20        On July 14, 2020, Demaray filed two actions against Applied's customers, accusing them

21   of infringing the Asserted Patents by using Applied's products. *Demaray LLC v. Intel

22   Corporation*, No. 6:20-cv-634 (W.D. Tex. July 14, 2020); *Demaray LLC v. Samsung Electronics

23   Co., Ltd, et al.*, No. 6:20-cv-636 (W.D. Tex. July 14, 2020). (For ease of reference, the complaints

24   in these actions are attached as Exhibits A and B to Applied's First Amended Complaint ("FAC")

25   for Declaratory Judgment. The complaints are identical in many respects and therefore throughout

26   this Motion, Applied will refer only to the complaint against Intel to avoid needless duplicative

27   citations, unless otherwise noted.)

28

- 3 -

The product technology at issue—and in the Asserted Patents—generally relate to techniques for semiconductor manufacturing, including "magnetron sputtering." *See* Ex. A to FAC at ¶¶ 11–15. In both actions, Demaray alleges that its founder—Dr. Richard Earnest Demaray ("Mr. Demaray")—served as general manager of the physical vapor deposition (PVD) division for one of Applied's affiliates, Applied Komatsu, in the late 1990s, developing magnetron sputter machines. *Id.* at ¶¶ 1–3. Demaray alleges Mr. Demaray left Applied Komatsu to serve as Chief Technology Officer and Chairman of the Board for Symmorphix. *Id.* at ¶ 2.

Thereafter, Demaray alleges Mr. Demaray left Symmorphix to work for "more prominent companies in the industry" and ultimately founded Demaray LLC to "focus on research, development, and commercialization of new product applications based on technologies [Mr. Demaray] had developed, including technologies protected by" the Asserted Patents. *Id.* Demaray further alleges Mr. Demaray is a named inventor of the Asserted Patents, along with three other named inventors, and that Demaray is the assignee and owner of "all right, title, and interest" in the Asserted Patents. *Id.* at ¶¶ 1, 5.

As to both Intel and Samsung, Demaray accuses Applied's customers of infringing the Asserted Patents by using "RMS reactors" in the "Endura product line from Applied Materials, Inc." *Id.* at ¶¶ 25–31 (footnotes 2–5, 7, and 8 cite to Applied's website); *see also* Ex. B to FAC at ¶¶ 28–34 (same).[1] Demaray seeks damages against Intel and Samsung and, among other things, an injunction against both companies. Ex. A to FAC at Prayer for Relief.

While Demaray accused Applied's products, Demaray did not name Applied as a defendant in either action.

**B.    Applied's Declaratory Judgment Action against Demaray**

Because Demaray accused Applied's products and Applied's customers of patent infringement—thus placing a cloud over Applied's business—Applied initiated the instant action

---

[1] Although Demaray appears to suggest there may be infringing reactors made by manufacturers other than Applied, Demaray did not identify any other manufacturer or otherwise confirm that any other manufacturer exists. *See* Ex. A to FAC at ¶ 25 (. . . including, but not limited to . . .).

APPLIED'S MOTION FOR PRELIMINARY INJUNCTION

1    to come to the aid of its customers and to confirm that none of Intel, Samsung, and Applied

2    infringes the Asserted Patents by reason of Applied's products. FAC at ¶¶ 1–2. In this action,

3    Applied seeks a declaratory judgment against Demaray asserting that that Applied's products do

4    not directly or indirectly infringe the Asserted Patents. *Id*. at ¶¶ 43–52.

5        Additionally, Applied seeks a declaratory judgment against Demaray that: (1) Applied's

6    products cannot infringe the Asserted Patents because the rights of a named inventor, Mukundan

7    Narasimhan, in the Asserted Patents were assigned to Applied, making Applied at least a co-

8    owner of the Asserted Patents that has not joined and will not join Demaray in alleging

9    infringement of the Asserted Patents; and (2)(a) Applied holds a license to the Asserted Patents

10    based on an agreement between Applied's affiliate (Applied Komatsu) and Demaray's

11    predecessor company (Symmorphix); or, alternatively, (2)(b) Applied's products cannot infringe

12    the Asserted Patents because the rights of one or more named inventors were assigned to Applied

13    Komatsu, making Applied Komatsu at least a co-owner of the Asserted Patents that has not joined

14    and will not join Demaray in alleging infringement of the Asserted Patents. *Id*. at ¶¶ 53–64.[2]

15        Mr. Demaray and each of the three other named inventors of the Asserted Patents are

16    former and/or current employees of Applied or Applied's affiliate, Applied Komatsu. *See id*. at ¶

17    23. Importantly, each named inventor agreed to assign certain patented inventions to Applied or

18    Applied Komatsu. *Id*. at ¶¶ 24–25. This includes the inventions described in the Asserted Patents.

19    *Id* at ¶ 30. Subsequently, Mr. Demaray, along with several colleagues from Applied and Applied

20    Komatsu, left in 1998 to start a new company, Symmorphix, working on some of the same

21    technology they worked on at Applied and Applied Komatsu, including sputtered silicon

22    deposition technology (the technology at issue in this action and the customer suits). *Id*. at ¶¶ 15–

23

---

24    [2] Applied filed its initial Complaint on August 13, 2020, Dkt. No. 1, and subsequently filed the

25    FAC on September 1, 2020, to add the referenced license and ownership-based non-infringement

26    counts, Dkt. No. 13. For ease of reference, and in accordance with this Court's Standing Order,

27    Applied included a red-line document showing the changes made to the initial Complaint. *See* Ex.

28    F to the FAC.

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1    16. In late 1998, Applied Komatsu and Symmorphix executed a Sale and Relationship

2    Agreement, under which Symmorphix would purchase two Applied Komatsu systems and

3    continue using the Applied Komatsu facilities to operate the equipment. Pursuant to the Sales and

4    Relationship Agreement, Symmorphix continued using the Applied Komatsu facilities and

5    equipment until at least the Fall of 1999. *Id*. at ¶¶ 17–19.

6         In early 1999, Applied Komatsu and Symmorphix entered into an amendment to the Sales

7    and Relationship Agreement, under which Symmorphix granted to Applied Komatsu a perpetual,

8    royalty-free license to "inventions, improvements, or enhancements developed by Symmorphix

9    relating to sputtered silicon deposition technology"—the technology embodied in the Asserted

10   Patents. *Id*. at ¶¶ 17–19. Further, the license grant expressly permitted Applied Komatsu to

11   transfer or assign such license grant to Applied, and expressly allowed Applied Komatsu's

12   customers to use such inventions as well. *Id*. In effect, the amendment to the Sales and

13   Relationship Agreement converted the assignment obligations under the former Applied Komatsu

14   employees' employment agreements into a license agreement between Symmorphix and Applied

15   Komatsu, which is freely transferable to Applied and Applied's customers, such as Intel and

16   Samsung. *Id*.

17        Separately, one of the named inventors, Mukundan Narasimhan, was an employee of

18   Applied, and not an employee of Applied Komatsu. *Id.* at ¶¶ 29–33. Under the provisions of his

19   employee agreement with Applied, Mr. Narasimhan's ownership rights in the Asserted Patents'

20   parent application were automatically assigned to Applied. *Id.*

21        Therefore, in addition to seeking a declaratory judgment in this action that Applied's

22   products do not infringe the Asserted Patents—*i.e.*, that they do not practice the claimed

23   inventions—Applied separately seeks a declaration that (1) Applied's products cannot infringe

24   the Asserted Patents because Mr. Narasimhan's rights were automatically assigned to Applied,

25   making Applied at least a co-owner in the Asserted Patents that has not been joined in the

26   infringement suits; and (2)(a) Applied holds a license to the Asserted Patents by virtue of an

27   agreement between Applied Komatsu and Symmorphix; or, alternatively, (2)(b) Applied's

28   products cannot infringe the Asserted Patents because one or more of the named inventors' rights

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1    were automatically assigned to Applied Komatsu making it at least a co-owner in the Asserted

2    Patents that has not been joined in the infringement suits. A finding as to either Mr. Narasimhan's

3    assignment to Applied or the Applied Komatsu–Symmorphix agreement granting a license and/or

4    ownership rights to the Asserted Patents would be dispositive of this action—and similarly

5    Demaray's customer suits would be adjudicated in favor of Intel and Samsung.

6    **III.**    **LEGAL ARGUMENT**

7         **A.**    **This Court Has Authority to Enjoin a Customer Suit Where the**
          **Manufacturer's Action Has the Potential to Resolve Major Issues in the**
8         **Customer Suits**

9         As a preliminary matter, Federal Circuit law applies to the Court's determination of

10   whether to enjoin a co-pending patent suit. *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d

11   1326, 1331 (Fed. Cir. 2004) ("[B]ecause of the importance of national uniformity in patent cases,

12   we hold that injunctions arbitrating between co-pending patent declaratory judgment and

13   infringement cases in different district courts are reviewed under the law of the Federal Circuit.");

14   *see, e.g.*, *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949, 954 (N.D. Iowa

15   2006) (applying Federal Circuit law on motion for preliminary injunction to enjoin co-pending

16   customer suit); *Amazon.com, Inc. v. Corydoras Techs., LLC*, No. 1:19-cv-1095-RP, 2020 U.S.

17   Dist. LEXIS 57969, at *6 (W.D. Tex. Apr. 2, 2020) (same).

18        The Federal Circuit has empowered district courts presiding over a manufacturer's

19   declaratory judgment action against a patentee to enjoin a co-pending infringement action against

20   the manufacturer's customers. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir.

21   1990) (affirming preliminary injunction of customer suit during the pendency of manufacturer's

22   suit: "litigation against or brought by the manufacturer of infringing goods takes precedence over

23   a suit by the patent owner against customers of the manufacturer") (citing *Codex Corp. v. Milgo*

24   *Electronic Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977) (reversing the district court's denial of an

25   injunction to enjoin the patentee's prior-filed customer suit during the pendency of the

26   manufacturer's declaratory judgment action against the patentee)); *see also ProBatter Sports*, 463

27   F. Supp. 2d at 954–56 (applying "analytical framework of *Katz*" and issuing preliminary

28

APPLIED'S MOTION FOR PRELIMINARY
                                                                                  INJUNCTION

1   injunction to enjoin patentee from proceeding with co-pending customer suits during the

2   pendency of the manufacturer's suit).

3       The rationale for favoring the manufacturer's declaratory judgment action over the

4   customer suit is simple: "At the root of the preference for a manufacturer's declaratory judgment

5   action is the recognition that, in reality, the manufacturer is the true defendant in the customer

6   suit. . . . [I]t is a simple fact of life that a manufacturer must protect its customers, either as a

7   matter of contract, or good business, or in order to avoid the damaging impact of an adverse

8   ruling against its products." *Katz*, 909 F.2d at 1464 (quoting *Codex*, 553 F.2d at 737–38).

9       This principle—that a manufacturer's suit should take precedence over a patentee's

10  customer suit—is so established that the Federal Circuit has issued multiple writs of mandamus

11  ordering district courts to stay customer suits in favor of manufacturer suits where the district

12  courts initially declined to do so. *See, e.g.*, *In re Google Inc.*, 588 F. App'x 988, 992 (Fed. Cir.

13  2014) (ordering a stay of infringement actions against mobile device makers during the pendency

14  of the accused software maker's declaratory judgment action); *In re Nintendo of Am., Inc.*, 756

15  F.3d 1363, 1366 (Fed. Cir. 2014) (ordering a stay of infringement claims against retailers during

16  the pendency of infringement claims between the manufacturer and patentee); *cf. Kahn v. Gen.*

17  *Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989) ("There is no functional distinction between

18  a stay of the first-filed suit and an injunction against prosecution of the first-filed suit.").

19      Indeed, even before the Federal Circuit assumed exclusive jurisdiction over appeals from

20  district courts cases related to patents, the Ninth Circuit, following guidance from other courts,

21  endorsed the policy justification for enjoining a patentee from proceeding with a first-filed

22  customer suit during the pendency of the manufacturer's suit against the patentee. *See Pacesetter*,

23  678 F.2d at 96 ("sound judicial administration" supports enjoining patentee "from proceeding

24  with a first-filed action against a customer for infringement when a second action has been filed

25  by the manufacturer against the patentee contesting the validity of the patent") (citing *William*

26  *Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (upholding district court

27  order enjoining patentee from further litigating prior-filed patent infringement action against

28

- 8 -

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1  manufacturer's customers during the pendency of the manufacturer's declaratory action for non-

2  infringement)).

3      While ordinarily a preliminary injunction requires analysis of the traditional four-part test,

4  the Federal Circuit has confirmed that that test "does not apply to the [] question of whether to

5  enjoin the prosecution of concurrent litigation." *Katz*, 909 F.2d at 1463 ("it is not controlling

6  whether the plaintiff is likely to succeed on the merits"). Rather, under the *Katz* framework, "a

7  primary question is whether the issues and parties are such that the disposition of one case would

8  be dispositive of the other." *Id*. The manufacturer's declaratory judgment action need not resolve

9  *all issues* presented in the customer suit; instead, "the manufacturer's case need only have the

10  potential to resolve the 'major issues' concerning the claims against the customer—not every

11  issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir.

12  2011) (quoting *Katz*, 909 F.2d at 1464); *see also Amazon.com,* 2020 U.S. Dist. LEXIS 57969, at

13  *10 (finding manufacturer's declaratory judgment action for non-infringement against patentee

14  would resolve the "major issues" involved in the co-pending patentee's customer suit); *ProBatter*

15  *Sports*, 463 F. Supp. 2d at 954–56 (same).

16      A critical policy consideration for favoring a manufacturer's suit over the customer suit—

17  aside from the manufacturer's greater interest in litigating ahead of its customers—is the

18  likelihood that (1) doing so would avoid substantial waste of public and private resources by

19  engaging in duplicative litigation, particularly where there are multiple customer suits, and (2) it

20  would avoid the potential for conflicting decisions relating to the same asserted patents and the

21  same accused products. *See In re Google*, 588 F. App'x at 990 ("The only potential results of

22  adjudicating these cases in parallel fashion would be the Texas and California courts agree on the

23  major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts

24  disagree, thus producing conflicting decisions.").

25      The cases here present the classic case warranting a temporary halt of the customer suits

26  in favor of the manufacturer's action. The issues presented in this action will be dispositive of the

27  majority—if not all—of the issues raised in Demaray's customer suits. Thus, proceeding with all

28  three actions in tandem would produce wasteful and unnecessary litigation and the potential for

- 9 -

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1    conflicting decisions. Enjoining Demaray from proceeding with the customers suits resolves these

2    problems and produces the most equitable and efficient result.

3            First, the patent ownership and license issues presented in this action are likely dispositive

4    of this action and the customer suits. At issue in this action is whether Applied's products can

5    infringe the Asserted Patents in light of named inventor Mr. Narasimhan's assignment of rights in

6    the Asserted Patents to Applied, making Applied at least a co-owner of the Asserted Patents that

7    has not joined and will not join Demaray in alleging infringement of the Asserted Patents. *See*

8    FAC at ¶¶ 28–33. Also at issue is whether Applied obtained a license to the Asserted Patents

9    under the Sales and Relationship Agreement between Applied's affiliate (Applied Komatsu) and

10   Demaray's predecessor company (Symmorphix). *See* FAC at ¶¶ 17–19. In the alternative, if the

11   Sales and Relationship Agreement did not grant a license, at issue is whether certain of the named

12   inventors of the Asserted Patents, who are former employees of Applied Komatsu, assigned the

13   Asserted Patents to Applied Komatsu through their employment agreements, making Applied

14   Komatsu at least a co-owner of the Asserted Patents that has not joined and will not join Demaray

15   in alleging infringement of the Asserted Patents. *Id.* at ¶¶ 17–19, 24.

16           These ownership and licensing issues—which are personal disputes between Applied and

17   Demaray (and their affiliates), and do not involve Intel and Samsung—can likely be resolved in

18   this action on limited discovery and in advance of the technical non-infringement questions. If

19   Applied prevails on the ownership or licensing issues, then not only would it terminate this action

20   entirely—*i.e.*, it would render moot the technical non-infringement question—but it would also

21   require a judgment of non-infringement in the customer suits against Intel and Samsung.

22           Applied's customers, as purchasers of an authorized licensee, are protected from

23   infringement allegations under the doctrine of patent exhaustion. In other words, because Applied

24   has a license to the Asserted Patents, Applied's sale of products to its customers exhausts

25   Demaray's patent rights, such that Applied's customers are treated as though they purchased the

26   products directly from Demaray under a license. *See Finjan, Inc. v. Qualys Inc.*, No. 4:18-cv-

27   07229-YGR, 2020 U.S. Dist. LEXIS 65446, at *5 (N.D. Cal. Apr. 13, 2020) ("Patent exhaustion

28   extends to sales made by authorized licensees; '[s]o long as a licensee complies with the license

- 10 -

1    when selling an item,' the 'licensee's sale is treated . . . as if the patentee made the sale itself' and

2    the patent rights are exhausted.") (quoting *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S.

3    Ct. 1523, 1535, 198 L. Ed. 2d 1 (2017)); *see also* 35 U.S.C. § 271(a) ("Except as otherwise

4    provided in this title, whoever *without authority* makes, uses, offers to sell, or sells any patented

5    invention, within the United States or imports into the United States any patented invention

6    during the term of the patent therefor, infringes the patent.") (emphasis added).

7         Likewise, if Applied prevails on the ownership issues, this would also result in

8    termination of this action—again, the technical non-infringement question would be rendered

9    moot—and Demaray's customer suits would require judgment in favor of Intel and Samsung

10   because Demaray cannot maintain the customer suits without Applied and/or Applied Komatsu's

11   consent. *See STC.UNM v. Intel Corp.*, 754 F.3d 940, 944–46 (Fed. Cir. 2014) (where a patent co-

12   owner does not consent to an infringement suit and the co-owner cannot be involuntarily joined,

13   the suit must be dismissed); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467–68 (Fed.

14   Cir. 1998) ("[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join

15   as plaintiffs in an infringement suit.").

16        Second, even assuming *arguendo* that the ownership and licensing issues are not

17   dispositive of this action and the customer suits, Applied is also seeking a declaration of non-

18   infringement as to the same products at issue in the customer suits and the same Asserted Patents.

19   *Compare* FAC at ¶¶ 27, 43–52 (alleging non-infringement of Applied's Endura product line),

20   *with* Ex. A to FAC at ¶ 25 (alleging infringement of Applied's Endura product line), *and* Ex. B to

21   FAC at ¶ 28 (same). Thus, a finding of non-infringement as to Applied's products would be

22   dispositive of the majority—if not all—of the infringement issues in the customer suits.

23        Conversely, a finding of infringement against Applied would similarly advance the

24   ultimate disposition of the customer suits, particularly since Samsung and Intel would both agree

25   to be bound by the result in this action regarding the declaratory judgment causes of action

26   asserted in Applied's FAC. *See Katz*, 909 F.2d at 1464; *see also Sillage LLC v. Kenrose Perfumes*

27   *Inc.*, No. 8:14-cv-02043-CAS(RNBx), 2015 U.S. Dist. LEXIS 75965, at *15 (C.D. Cal. June 9,

28   2015) ("The Federal Circuit has found such an agreement highly relevant to the propriety of

- 11 -                          APPLIED'S MOTION FOR PRELIMINARY
                                           INJUNCTION

1    granting a stay in patent cases involving defendants in different levels of commerce.") (collecting

2    cases).[3] To the extent there are lingering questions to be resolved in the customer suits, Demaray

3    can resume the customer suits with the benefit of substantial and overlapping questions having

4    been resolved in this action—including claim construction of the Asserted Patents and whether

5    and to what extent Applied's products infringe the Asserted Patents.

6           Thus, however the merits of this action results, there is no question that it will be

7    dispositive of the majority—if not all—issues in the customer suits. As the Federal Circuit

8    recognized in *Katz*, such circumstances warrant a preliminary injunction of a co-pending

9    customer suit in favor the manufacturer action, even if "additional issues" may need to be

10   resolved thereafter in the customer suit:

11          [Manufacturers] have represented to the Massachusetts court that resolution of the
            major issues before that court, including patent infringement, patent validity, and
12          [patentee's] capacity to sue, will resolve these issues as to their customers. The
            Massachusetts court's injunction against prosecution of the [customer] action, on
13          this basis, was within the court's discretionary authority. Although there may be
            additional issues involving the defendants in the [customer] action, their
14          prosecution will be advanced if [patentee] is successful on the major premises
            being litigated in Massachusetts, and may well be mooted if he is unsuccessful.
15

16   909 F.2d at 1464.

17          Finally, consideration of judicial administration and efficiency, the needless expenditure

18   of party and judicial resources, and the potential for conflicting decisions weighs heavily in favor

19   of enjoining Demaray from proceeding with the customer suits. First, the customer suits are in

20   their infancy—Samsung's deadline to respond to the complaint is September 29, 2020, *see*

21   *Demaray v. Samsung*, Dkt. No. 20, and Intel's deadline to respond to the complaint is September

22   21, 2020, *see Demaray v. Intel*, Dkt. No. 14. The court has not ordered a case management

23   conference or issued a case schedule, discovery has not commenced, and neither the court nor the

24   parties have taken meaningful action. Thus far, no real judicial or party resources have been

25

26   [3] Applied has conferred with Samsung and Intel. Upon the Court's request for purposes of

27   finalizing any order, Applied will coordinate with Samsung and Intel to have these

28   representations made part of the record in this action.

APPLIED'S MOTION FOR PRELIMINARY
                                                   INJUNCTION

1    invested in the customer suits. However, if both customer suits and this action were to proceed in

2    parallel fashion, the cases would necessarily require duplicative proceedings on the same issues—

3    including potential pleadings motions, fact discovery, claim construction, expert reports, expert

4    discovery, dispositive motions, and trial *for all three actions*.

5         Not only would this result in an incredible waste of court and party resources—including

6    likely millions of dollars in attorney bills per case—but it would also raise the substantial risk of

7    conflicting determinations across three actions, including as to construction of claim terms in the

8    Asserted Patents in each case and infringement/non-infringement findings as to Applied's

9    products in each case. The existence of overlapping claim construction and potentially dispositive

10   non-infringement issues alone justifies a temporary halt to the customer suits, even without

11   considering the dispositive license and ownership issues presented in this action. Applied, as the

12   manufacturer of the accused products in Demaray's customer suits, is the "true defendant" and

13   should be permitted to "protect its customers" by pursuing its non-infringement action ahead of

14   the customer suits. *See Katz*, 909 F.2d at 1464 (quoting *Codex*, 553 F.2d at 737–38).

15        Finally, the ownership and licensing disputes between Demaray and Applied—which are

16   limited in scope, do not involve Intel and Samsung, and can be resolved quickly and

17   inexpensively ahead of the technical non-infringement case—could obviate the need to waste

18   party and judicial resources litigating technical infringement issues in all three actions. As the

19   Federal Circuit noted in *In re Google* in its order staying multiple customer suits in favor of the

20   manufacturer's suit: "it is clear that there was no need to proceed with the five Texas actions

21   because the one California action may suffice." 588 F. App'x at 990.

22        Similarly, here the question presented is whether to allow three cases to proceed on

23   substantially identical issues, thus ensuring a colossal waste of resources and potentially

24   conflicting decisions, or instead to favor this action, wherein the manufacturer has the greater

25   interest and which has the potential to obviate the need for extensive, parallel litigation. All

26   relevant factors weigh heavily in favor of enjoining Demaray from proceeding with its customer

27   suits during the pendency of this action.

28

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1    As explained, a preliminary injunction is warranted here under the *Katz* framework—*i.e.*,

2  that resolution of the manufacturer's action will resolve the "major issues" in the customer suits.

3  The remainder of this brief addresses issues that are sometimes implicated when a court is

4  considering whether to stay or enjoin a patentee's customer suit in favor of the manufacturer's

5  action. Consideration of each issue discussed below demonstrates further that a preliminary

6  injunction is warranted here.

### B.     This Action Is the First Filed Action Under the "First-to-File" Rule—Not the Customer Suits—and Regardless, the "Customer Suit" Exception Applies

Sometimes implicated in the consideration of whether to enjoin a co-pending customer

suit is the potential application of the first-to-file rule and the "customer suit" exception. This

action is the "first-filed" action under the first-to-file rule because the customer suits do not

include Applied. Thus, under the first-to-file rule this action takes precedence. Moreover, even if

the customer suits were somehow deemed "first filed" under the rule, this action takes precedence

under the "customer suit" exception to the first-to-file rule. Therefore, however the first-to-file

rule is applied, it favors enjoining Demaray from proceeding with its customer suits during the

pendency of this action.

"The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting

decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action

when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd.*

*v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The first-to-file rule is implicated when an

action with "the <u>same parties and issues</u> has already been filed in another district." *In re Founds.*

*Worldwide, Inc.*, 542 F. App'x 998, 999 (Fed. Cir. 2013) (emphasis added); *see also Pacesetter*,

678 F.2d at 94–95 ("There is a generally recognized doctrine of federal comity which permits a

district court to decline jurisdiction over an action when a complaint involving the <u>same parties</u>

<u>and issues</u> has already been filed in another district.") (emphasis added); *compare id.* at 96 ("The

considerations of sound judicial administration are obviously different when the issues are

identical but the parties are different and the parties to the second action are the major contestants.

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1   . . . That situation is not present in this case because the same parties are involved in both

2   actions.").

3        Here, Demaray's customer suits are not the "first-filed" action because the customer suits

4   do not involve the "same parties" as this action. Notably absent from the customer suits is the

5   manufacturer of the accused products: Applied. Indeed, a well-reasoned decision from this

6   District confirms this is the proper application of the first-to-file rule. In *Google Inc. v. Rockstar*

7   *Consortium U.S. LP*, No. C 13-5933 CW, 2014 U.S. Dist. LEXIS 53757, at *31–32 (N.D. Cal.

8   Apr. 17, 2014), the court addressed nearly identical circumstances presented here. There,

9   Rockstar filed several patent infringement actions against Google's customers in Texas, but did

10  not name Google as a defendant. *Id*. at *4. Google subsequently filed an action in this District for

11  a declaratory judgment that its software platform and products—the same products accused in the

12  Texas customer suits—do not infringe the patents Rockstar asserted against Google's customers.

13  *Id*. at *6. Rockstar subsequently amended one of the Texas actions to include infringement

14  allegations against Google, in addition to Google's customers. *Id*. Thereafter, Rockstar moved to

15  transfer Google's declaratory judgment action to Texas, claiming that the Texas action was the

16  "first-filed" action under the first-to-file rule. *Id*. at *31–32.

17       The court rejected Rockstar's argument that the Texas actions were first filed under the

18  rule. Although technically filed first in time, the Texas actions did not name Google as a

19  defendant until *after* Google filed its declaratory judgment action—thus, Google's declaratory

20  judgment action, not Rockstar's Texas actions, was the first-filed action. *Id*. The court also

21  rejected Rockstar's argument that Google and its customers are "substantially similar" parties—

22  for example, a wholly owned subsidiary or parent company—and concluded that the "relationship

23  between Google and the [Texas defendants] is one of manufacturer and customer." *Id*. at *31–

24  32.[4]

25  _____

26  [4] As explained above, the Federal Circuit ultimately stayed the Texas actions in favor of Google's

27  declaratory judgment action after the Texas court denied a motion to stay the customer actions. *In*

28  *re Google*, 588 F. App'x at 992.

APPLIED'S MOTION FOR PRELIMINARY
                                                                           INJUNCTION

1    Similarly, here, while Demaray may have filed suit against Applied's customers, Intel and

2    Samsung, 30 days before Applied filed the instant declaratory judgment action against Demaray,

3    the Texas actions do not include Applied as a defendant. The three actions may have substantially

4    overlapping issues—*e.g.*, same Asserted Patents and same accused products—but they do not

5    include the "same parties." Nor can Demaray claim that Applied, on the one hand, and Intel and

6    Samsung, on the other hand, are "substantially similar" parties (e.g., wholly owned subsidiary,

7    parent company, etc.). *See Google*, 2014 U.S. Dist. LEXIS 53757, at *32. Just like Google and

8    the device makers that use Google's software, the relationship between Applied and

9    Intel/Samsung is one of manufacturer and customer. Thus, for purposes of the first-to-file rule,

10   this action is the first-filed action.

11   Further, even assuming *arguendo* that Demaray's customer suits were the "first-filed"

12   actions under the first-to-file rule, the present circumstances fit squarely within the well-

13   recognized "customer suit" exception. The customer suit exception "provides that, in certain

14   patent cases, 'litigation against or brought by the manufacturer of infringing goods takes

15   precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread

16   Spectrum Screening*, 657 F.3d at 1357 (quoting *Katz*, 909 F.2d at 1464). Similar to the rationale

17   for enjoining a customer suit, the "customer suit" exception to the first-to-file rule is "based on

18   the manufacturer's presumed greater interest in defending its actions against charges of patent

19   infringement; and to guard against possibility of abuse." *Kahn*, 889 F.2d at 1081 (citing *Codex*,

20   553 F.2d at 737–38).

21   "Generally speaking, courts apply the customer suit exception to stay earlier-filed

22   litigation against a customer while a later-filed case involving the manufacturer proceeds in

23   another forum." *Spread Spectrum Screening*, 657 F.3d at 1357. However, as discussed above, the

24   rule is applicable beyond a request for a stay, and includes circumstances where the manufacturer

25   seeks to enjoin the patentee from proceeding with infringement actions against customers. *See

26   Katz*, 909 F.2d at 1464; *Codex*, 553 F.2d at 737–738; *Pacesetter*, 678 F.2d at 96; *William Gluckin

27   & Co.*, 407 F.2d at 178; *cf. Kahn*, 889 F.2d at 1080 ("[t]here is no functional distinction between

28   a stay of the first-filed suit and an injunction against prosecution of the first-filed suit").

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

To that end, the second issue addressed by the *Google v. Rockstar* court was whether the customer suit exception applied. The court held that it did because the device manufacturers were Google's customers (they use Google's software for their devices), and Google's declaratory judgment action for non-infringement would likely be dispositive of the customer suits in Texas. *See* 2014 U.S. Dist. LEXIS 53757, at *32 ("Because the determination of the infringement issues here would likely be dispositive of the other cases, and the manufacturer presumably has a greater interest in defending against charges of patent infringement than the customers, the present suit takes precedence.") (citing *Kahn*, 889 F.2d at 1081).

Similarly, here, as described above, (1) Applied, as the manufacturer of the accused products, has a far greater interest in litigating infringement charges against Applied's products, (2) this action, including the ownership, licensing, and non-infringement issues, is likely to prove dispositive of Demaray's customer suits, and (3) proceeding with all three actions would inevitably result in unnecessary waste of resources and the prospect for conflicting decisions relating to the same Asserted Patents and the same accused products. Thus, to the extent the first-to-file rule is applicable to a decision of whether to enjoin Demaray from proceeding with its customer suits, the rule poses no obstacle to ensuring the most efficient and cost-effective manner of concluding these actions: it favors resolution of the manufacturer's action ahead of the customer suits.

### C.   The Comparative Convenience of this District and the District Where the Customer Suits Are Venued Favors This Action over the Customer Suits

Also sometimes implicated in the question of whether to stay or enjoin a customer suit is the comparative convenience of both venues for the parties and witnesses. *See In re Google*, 588 F. App'x at 991 ("Wise judicial administration must also take into consideration the comparative convenience of both venues for resolving the matter.") (citing *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013)); *Codex*, 553 F.2d at 737–738 (considering comparative convenience of forums between patentee customer suit and manufacturer's declaratory judgment action); *see also Pacesetter*, 678 F.2d at 96 ("In appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the

APPLIED'S MOTION FOR PRELIMINARY INJUNCTION

1    parties and witnesses. This would be particularly true in the type of cases just mentioned where

2    the patentee and the customer are involved in one action and the patentee and the manufacturer

3    are involved in a second action.") (citing *William Gluckin & Co.*, 407 F.2d at 178 (considering

4    comparative convenience of patentee's customer suit venue and manufacturer's declaratory

5    judgment action venue)).

6         Here, there should be no question that this District is more convenient for all parties and

7    witnesses. Both Applied and Demaray are based in the Northern California—Applied has its

8    principal place of business in Santa Clara, and Demaray is based in Silicon Valley. *See*

9    Declaration of Boris Lubarsky ("Lubarsky Decl.") ¶¶ 2–3. Two of the four named inventors

10   reside in Northern California, including Mr. Demaray and Ravi Mullapudi. *Id.* ¶¶ 3–4.[5] The

11   attorney who prosecuted the applications for the Asserted Patents also resides and works in

12   Northern California. *Id.* ¶8. The contract that is the basis for the license and ownership issues

13   described above was negotiated, executed, and performed in Northern California. *Id.* ¶ 7. Finally,

14   Intel has its headquarters in Northern California, and Samsung, a Korean company, has a large

15   U.S. office in Northern California. *Id.* at ¶¶ 9–10.

16        **D.    There Are No Comity Concerns Due to the Procedural Posture of the Customer Suits**

17

18        While questions of comity may arise as a result of enjoining a party from proceeding with

19   a customer suit, the circumstances in this case present no comity concerns because an order from

20   this Court will not conflict with any order from the court presiding over Demaray's customer

21   suits. Indeed, a recent decision in the Western District of Texas—the district where Demaray's

22   customer suits are pending—provides critical guidance on this issues.

23        In *Amazon.com, Inc. v. Corydoras Techs., LLC*, No. 1:19-cv-1095-RP, 2020 U.S. Dist.

24   LEXIS 57969 (W.D. Tex. Apr. 2, 2020), the court was presented with nearly identical

25   circumstances presented here. In that case, Corydoras (patentee) sued Best Buy

26   (retailer/customer) for patent infringement in the Eastern District of Texas ("EDTX") based on

27   [5] The other two named inventors are in far flung jurisdictions; Hongmei Zhang resides in

28   Massachusetts, and Mukundan Narasimhan resides in India. *Id.* ¶¶ 5–6.

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1 products manufactured by Amazon and sold by Best Buy; but Corydoras did not sue Amazon. *Id*.

2 at \*2. To protect its customer, Amazon then initiated a declaratory judgment action for non-

3 infringement against Corydoras in the Western District of Texas ("WDTX"). Thereafter, on the

4 same day: (1) Best Buy moved in the EDTX court for a stay pending resolution of Amazon's

5 declaratory judgment action in the WDTX; and (2) Amazon moved in the WDTX court for a

6 preliminary injunction to enjoin Corydoras from proceeding with the customer suit against Best

7 Buy in the EDTX court. *Id*. at \*2.

8       In the competing motion practice, both Corydoras and Amazon claimed their respective

9 actions deserved preference under the first-to-file rule and the customer suit exception,

10 respectively. *Id*. at \*3, 9–10. The first court to issue a decision was the EDTX court. The EDTX

11 court denied Best Buy's motion to stay—ruling that *it* (not the WDTX court) was the appropriate

12 court to determine which action was first filed under Fifth Circuit precedent—and holding that

13 Corydoras was first to file and that the customer suit exception did not apply. *Id*. at \*8.

14 Thereafter, the WDTX court ruled on the motion for preliminary injunction. The WDTX court

15 first confirmed that Federal Circuit law applies to the questions presented—and not the precedent

16 from regional circuit court of appeals. *Id*. at \*6 (quoting *Lab. Corp.*, 384 F.3d at 1331). The

17 WDTX court further confirmed (1) that the Federal Circuit has empowered district courts,

18 including the court in the second-filed action, to make determinations as to which action is "first-

19 filed" and whether the customer suit exception applies, and (2) that the Federal Circuit has

20 empowered district courts to enjoin co-pending customer suits during the pendency of an action

21 between the manufacturer and the patentee. *Id*. at \*9 (citing *Katz*, 909 F.2d at 1462–64).[6]

22 _____

23 [6] With due respect to the EDTX court, the error in its analysis is that it applied the law from its

24 regional circuit court of appeals—the Fifth Circuit—rather than Federal Circuit law, to hold that

25 the second-filed court is precluded from ruling on the application of the first-to-file rule and the

26 customer suit exception. *See Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-

27 RSP, 2020 U.S. Dist. LEXIS 45578, at \*4 (E.D. Tex. Mar. 16, 2020). The correct approach, as

28 explained in the WDTX decision, is to apply Federal Circuit law, *see Lab. Corp.*, 384 F.3d at

1    The WDTX court also noted that it would find the customer suit exception applicable

2    because resolution of Amazon's declaratory judgment action for non-infringement would have

3    the "potential to resolve the 'major issues' concerning the claims against Best Buy that relate to

4    Amazon-manufactured products." *Id.* at *10. However, recognizing the "overarching interest in

5    comity," the court noted "[i]f [it] were to enjoin Corydoras at this point, its order would directly

6    contravene the [EDTX court's] previous order [denying Best Buy's motion to stay]—a result to

7    be avoided if at all possible," and therefore the WDTX court denied the motion for preliminary

8    injunction. *Id.* at *10–11. The takeaway from the WDTX court's decision is two-fold: (1) the

9    Federal Circuit has empowered district courts to enjoin a prior-filed customer suit action (and to

10   make findings with respect to the applicability of the first-to-file rule and the customer suit

11   exception); and (2) out of respect for overarching principles of comity, district courts should

12   abstain from doing so if the court of the prior-filed action has already made such findings, for

13   example, as part of a motion to stay brought by the customer.

14   Here, the comity concerns in *Amazon* are not present. As explained, the customer suits are

15   in their infancy—neither Samsung nor Intel has responded to the complaint, and neither the

16   parties nor the court has taken any real action. Thus, unlike in *Amazon*, there is no concern that an

17   order from this Court enjoining Demaray from proceeding with the customer suits would conflict

18   with any order issued by the court where the customer suits are pending.

19   **IV.    CONCLUSION**

20   The Federal Circuit has empowered district courts to preliminarily enjoin a patentee from

21   proceeding with customer infringement actions where the manufacturer's suit has the potential to

22   _____

23   1331, which holds that the second-filed action can make such determinations and indeed can

24   enjoin the patentee from further prosecuting the customer suit, *Amazon*, 2020 U.S. Dist. LEXIS

25   57969, *9–10 ("The [court] acknowledges that the Federal Circuit appears to have endorsed the

26   practice of the second court deciding the applicability of the customer suit exception. In *Katz*, the

27   Federal Circuit permitted the second court to enjoin a party from pursuing claims the case filed in

28   the first court.") (citing *Katz*, 909 F.2d at 1464).

APPLIED'S MOTION FOR PRELIMINARY
INJUNCTION

1    resolve the major questions in the customer suits. This action raises not only the overlapping

2    question of infringement as to the same Asserted Patents and the same accused products, but also

3    raises straightforward and dispositive ownership and licensing questions that may obviate the

4    need to litigate technical infringement in all three actions. Applied, as the manufacturer of the

5    accused products, has the greater interest in defending its products against accusations of

6    infringement, and doing so is more efficient, economical, and convenient than proceeding in

7    parallel fashion with the customer suits. All relevant factors favor issuance of a preliminary

8    injunction to enjoin Demaray from proceeding with its customer suits during the pendency of this

9    action.

10

11   DATED:  September 4, 2020                    YAR R. CHAIKOVSKY
                                                  PAUL HASTINGS LLP
12

13                                                By: */s/ Yar R. Chaikovsky*
                                                        YAR R. CHAIKOVSKY
14

15                                                Attorneys for Plaintiff
                                                  APPLIED MATERIALS
16

17

18

19

20

21

22

23

24

25

26

27

28

APPLIED'S MOTION FOR PRELIMINARY
                                                                   INJUNCTION