1  IRELL & MANELLA LLP
   Morgan Chu (70446)
2  MChu@irell.com
   Benjamin W. Hattenbach (186455)
3  BHattenbach@irell.com
   C. Maclain Wells (221609)
4  MWells@irell.com
   1800 Avenue of the Stars, Suite 900
5  Los Angeles, California 90067-4276
   Telephone:   (310) 277-1010
6  Facsimile:   (310) 203-7199

7
   Attorneys for Defendant
8  DEMARAY LLC

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  APPLIED MATERIALS, INC.,            )  Case No. 5:20-cv-05676-EJD
                                        )
14              Plaintiff,              )  **DEMARAY LLC'S OPPOSITION TO**
                                        )  **APPLIED MATERIALS' MOTION FOR**
15       vs.                            )  **PRELIMINARY INJUNCTION**
                                        )
16  DEMARAY LLC,                        )  **Hearing Date: November 12, 2020**
                                        )  **Hearing Time: 9:00 a.m.**
17              Defendant.              )
                                        )
18  ————————————————————————           )

19

20

21

22

23

24

25

26

27

28

10877827

# <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. SUMMARY OF FACTS ............................................................................................... 3

III. DISCUSSION ............................................................................................................. 5

    A. The Court Lacks Subject Matter Jurisdiction Over Applied's Claims .................... 5

    B. Applied Has Not Proven Entitlement To The Extraordinary Remedy
    It Seeks ................................................................................................................ 8

    C. Applied Applies The Wrong Legal Standard In Requesting An
    Extraordinary Remedy Based Upon Unfounded
    Licensing/Ownership Claims ................................................................................ 10

    D. Applied Bases Its Request Upon On Contract Provisions Already
    Adjudicated In This District To Be Unlawful ....................................................... 11

    E. The Customer Suit Exception Does Not Warrant Enjoining The
    Texas Actions ....................................................................................................... 16

        1. Intel And Samsung Are Not Mere Resellers Of Applied
        Reactors ................................................................................................... 16

        2. Intel's And Samsung's Supposed Agreement To Be Bound
        Would Leave Major Open Issues Unresolved ........................................... 17

        3. Applied Does Not Allege Or Show That It Is The Only Intel
        And Samsung PVD Reactor Supplier ....................................................... 19

        4. Major Issues Present In Texas Are Lacking From The
        Present Case ............................................................................................. 20

        5. Applied Again Applies The Wrong Legal Standard .................................. 22

    F. Convenience Factors Do Not Favor One Forum Over The Other ......................... 23

IV. CONCLUSION ........................................................................................................... 25

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**[1]

4

*Alfarah v. City of Soledad*,
5
   No. 5:15-cv-05569-EJD, 2016 U.S. Dist. LEXIS 82624 (N.D. Cal. June 24,
   2016) (J. Davila)...........................................................................................................11

6

*Alltrade, Inc. v. Uniweld Products, Inc.*,
7
   946 F.2d 622 (9th Cir. 1991)..............................................................................15, 25

8

*Am. Acad. of Sci. v. Novell, Inc*.,
9
   No. C-91-4300 EFL, 1992 U.S. Dist. LEXIS 20145 (N.D. Cal. July 9, 1992)............17, 21

10

*Amazon.com, Inc. v. Corydoras Techs., LLC*,
   No. 1:19-cv-1095-RP, 2020 U.S. Dist. LEXIS 57969 (W.D. Tex. Apr. 2, 2020) ....................10

11

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip., Inc.*,
12
   630 F. Supp. 2d 1084 (N.D. Cal. May 20, 2009) ............................................... *passim*

13

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
14
   689 F.3d 1303 (Fed. Cir. 2012)...........................................................................5

15

*Axis Reinsurance Co. v. Northrop Grumman Corp.*,
   No. 2:17-cv-08660-AB, 2018 U.S. Dist. LEXIS 222622 (C.D. Cal. June 21,
16
   2018)..............................................................................................................9

17

*Berkeley*IEOR v. Teradata Operations, Inc.*,
18
   No. 17 C 7472, 2019 U.S. Dist. LEXIS 36563 (N.D. Ill. March 7, 2019)................................21

19

*Church of Scientology v. United States Dep't of the Army*,
   611 F.2d 738 (9th Cir. 1979).........................................................................25

20

*Cisco Sys. v. TiVo, Inc.*,
21
   No. C 12-02766 RS, 2012 U.S. Dist. LEXIS 112923 (N.D. Cal. Aug. 10, 2012) ....................16

22

*Codex Corp. v. Milgo Electronic Corp.*,
   553 F.2d 735 (1st Cir. 1977) ........................................................................24

23

*Corydoras Techs., LLC v. Best Buy Co*.,
24
   No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578 (E.D. Tex. Mar.
25
   16, 2020).............................................................................................22

26

*Crossbow Tech., Inc. v. YH Tech*.,

27

---

[1] Unless otherwise noted, internal citations, quotations and subsequent history are omitted,

28

and emphasis is added unless otherwise indicated.

531 F. Supp. 2d 1117 (N.D. Cal. 2007) ..........................................................................5

*Del Mar Avionics v. Quinton Instruments Co.*,
645 F.2d 832 (9th Cir. 1981)...........................................................................................9

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ......................................................................................................23

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
No. 2:15-CV-1202-WCB, 2016 U.S. Dist. LEXIS 55205 (E.D. Tex. Apr. 26,
2016)...............................................................................................................................21

*Finisar Corp. v. Cheetah Omni, LLC*,
No. 11-cv-15625, 2012 U.S. Dist. LEXIS 198501 (E.D. Mich. Nov. 19, 2012) ......................23

*Futurewei Techs., Inc. v. Acacia Research Corp*,
737 F.3d 704 (Fed. Cir. 2013).......................................................................................16

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014)................................................................................23

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
544 F. Supp. 2d 949 (N.D. Cal. 2008) ..........................................................................16

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) .......................................................................... *passim*

*Kline v. Burke Constr. Co.*,
260 U.S. 226 (1922) ...............................................................................................9, 15

*Microchip Tech., Inc. v. United Module Corp.*,
No. CV-10-04241-LHK, 2011 U.S. Dist. LEXIS 73276 (N.D. Cal. July 7,
2011)...............................................................................................................................20

*Microsoft v. DataTern*,
755 F.3d 899 (Fed. Cir. 2014) ............................................................................ *passim*

*Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*,
No. C-11-1892 EMC, 2012 U.S. Dist. LEXIS 112346 (N.D. Cal. Aug. 9, 2012) ....................15

*Native Fed'n of the Madre De Dios River & Tributaries v. Bozovich Timber Prods.*,
491 F. Supp. 2d 1174 (2007)............................................................................................5

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014) .....................................................................................23

*Open Text, S.A. v. Box, Inc.*,
36 F. Supp. 3d 885 (N.D. Cal. 2014) (J. Davila)...........................................9, 11, 24

*Pacesetter Sys. Inc. v. Medtronic, Inc.*,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

678 F.2d 93 (9th Cir. 1982)....................................................................................10, 16, 24, 25

*Power Integrations, Inc. v. De Lara*,
   No. 20-cv-410-MMA (MSB), 2020 U.S. Dist. LEXIS 52724 (S.D. Cal. Mar.
   26, 2020)........................................................................................................................14

*Proofpoint, Inc. v. InNova Patent Licensing, LLC*,
   No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343 (N.D. Cal. Oct. 17,
   2011)..........................................................................................................................15, 19

*Proofpoint, Inc. v. InNova Patent Licensing*,
   No. 5:11-cv-02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011).......................8, 16, 25

*RegenLab USA LLC v. Estar Techs. Ltd.*,
   No. 16-cv-08771 (ALC), 2017 U.S. Dist. LEXIS 131495 (S.D.N.Y. Aug. 17,
   2017)................................................................................................................................22

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ........................................................................................23

*Sillage LLC v. Kenrose Perfumes Inc.*,
   No. 8:14-cv-02043-CAS(RNBx), 2015 U.S. Dist. LEXIS 75965 (C.D. Cal. June
   9, 2015)............................................................................................................................19

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ............................................................................... *passim*

*Tegic Communs. Corp. v. Bd. of Regents*,
   458 F.3d 1335 (Fed. Cir. 2006) ..........................................................................15, 16, 17, 19

*Telebrands Corp. v. Nat'l Exp., Inc.*,
   No. 12-6671, 2014 U.S. Dist. LEXIS 140279 (D.N.J. Oct. 2, 2014)........................................22

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009) ...............................................................................13, 14, 24

*Ultra Prods., Inc. v. Best Buy Co.*,
   No. 09-1095, 2009 U.S. Dist. LEXIS 78678 (D.N.J. Sept. 1, 2009) ........................................22

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
   2015 U.S. Dist. LEXIS 675 (E.D. Tex. Jan. 6, 2015) ..................................................10, 22, 26

*Wenke v. Forest Labs., Inc.*,
   No. 5:14-cv-01898-EJD, 2018 U.S. Dist. LEXIS 68176 (N.D. Cal. Apr. 23,
   2018) (J. Davila)................................................................................................................14

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................................11, 14

1

**Statutes**

2

Cal. Bus. & Prof. Code § 16600..............................................................................................12, 14

3

**Rules**

4

Fed. R. Civ. P. 12(b)(6)..............................................................................................................14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Demaray LLC ("Demaray") opposes Plaintiff Applied Materials, Inc.'s ("Applied") Motion for Preliminary Injunction for the reasons set forth below.

## I.    PRELIMINARY STATEMENT

In the early 2000s, Dr. Richard Ernest Demaray and his colleagues at Symmorphix, Inc. ("Symmorphix") developed a new method of depositing thin films, and an associated reactor configuration, that could be used for a process called physical vapor deposition ("PVD"). These inventions turned out to be particularly advantageous for fabricating key thin film layers within semiconductor devices. They are protected by U.S. Patent Nos. 7,544,276 ("the '276 patent") and 7,381,657 ("the '657 patent") (the "Demaray patents"). Exs. 1-2.[2] Dr. Demaray later discovered that Intel and Samsung were using his patented technology, without authorization, to manufacture thin films in their semiconductor devices. This infringement is occurring within Samsung's sole domestic semiconductor fabrication facility, which is located in the Western District of Texas—the same District where Intel also has a large facility and over 1,700 employees developing products using infringing methods. Demaray therefore brought suit in the Western District of Texas against Samsung and Intel (the "Texas cases"). The cases are assigned to Judge Albright, a knowledgeable jurist deeply familiar with patent issues, and are proceeding in an orderly fashion.

Rather than intervene in Texas, Applied filed this separate case here a month later. Applied asks this Court to (1) exercise subject matter jurisdiction over Applied's claims and then (2) grant the extraordinary remedy of an injunction halting the earlier-filed Texas cases pending before another Article III judge. Applied invites the Court to engage in clear error, both substantively and procedurally, without either the facts or law needed to support the preliminary injunction it seeks.

Regarding subject matter jurisdiction, the sole alleged basis in Applied's First Amended Complaint ("FAC") for an actual controversy with Demaray is the filing of the Texas cases against Applied customers. But the mere filing of litigation by a patentee against a customer based on activities that involve the declaratory judgment plaintiff's product does not create a case or controversy. *Microsoft v. DataTern*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("To the extent that Appellees argue that DataTern's suits against its customers automatically give rise to a case or

---

[2] All exhibits are attached to the Declaration of C. Maclain Wells filed herewith.

1    controversy regarding induced infringement, we do not agree"). In this instance, Applied's reactors

2    standing alone are not accused of infringement in Texas. Instead, methods of thin film deposition in

3    a reactor with a specific configuration used by Intel and Samsung, and that specific reactor

4    configuration, are accused. There is no allegation in Texas (or in this case) that Applied provides

5    the special reactor configuration to Intel or Samsung or encourages its use, or that Applied's

6    reactors standing alone have no substantial non-infringing uses. On these facts, controlling Federal

7    Circuit precedent provides that no jurisdiction exists. *Id.*, at 906.

8         Regarding the requested injunction, Applied argues that: (1) its licensing/ownership

9    declaratory judgment claims will be dispositive of the claims in Texas, and (2) the Texas actions are

10   mere "customer suits" and its non-infringement declaratory judgment claims will thus resolve the

11   major issues in Texas actions. Mot. at 2. Applied is doubly incorrect.

12        First, Applied has no legitimate basis for asserting that it owns or is licensed to use the

13   Demaray patents. Applied's assertions to that effect all rely on Applied or Applied Komatsu

14   employee agreement assignment provisions. Applied fails to mention that Judge Ware already ruled

15   that the assignment provisions underlying each of Applied's licensing/ownership claims are

16   "unlawful non-compete provisions" and void as a matter of public policy. *See Applied Materials,*

17   *Inc. v. Advanced Micro-Fabrication Equip., Inc.,* 630 F. Supp. 2d 1084, 1090 (N.D. Cal. May 20,

18   2009). Applied's reliance on provisions already adjudicated against it to be unlawful weighs heavily

19   against the extraordinary relief it now seeks.

20        Second, the Texas actions are not mere "customer suits" addressing simple resale by the

21   Texas defendants of Applied products. The Texas cases concern particular uses by the Texas

22   defendants of manufacturing equipment those defendants have configured in a specific manner to

23   make their own semiconductor products. The Texas cases involve multiple major disputes between

24   Demaray and the Texas defendants that are not at issue here, including (i) infringement of reactors

25   as configured by the Texas defendants, (ii) infringement of Demaray's process claims by the Texas

26   defendants, (iii) invalidity allegations, (iv) unenforceability arguments, and (v) damages issues

27   addressing the Texas defendants' sale of billions of dollars of semiconductor products produced

28   using the claimed processes. As such, even if Applied's declaratory judgment claims were resolved

1    in this third-filed action, that would leave unanswered fundamental questions at issue in Texas.

2            For the foregoing reasons, as discussed in greater detail below, Applied's request for the

3    extraordinary remedy of an order enjoining the earlier-filed Texas cases should be denied.

4    **II.**    **SUMMARY OF FACTS**

5            Dr. Demaray, a named inventor on both of the Demaray patents, has been working in and

6    with the semiconductor industry for more than forty years. Declaration of Dr. Richard E. Demaray

7    ("Demaray Decl."), ¶ 2. Much of this work has focused on novel thin film technologies. *Id.,* ¶ 3.

8            In the late 1990s, Dr. Demaray helped form Applied Komatsu Technology, Inc. ("Applied

9    Komatsu"), a joint venture between Applied and Komatsu Ltd. *Id.,* ¶ 4. In 1998, Applied Komatsu

10   decided to "discontinue sales of PVD systems." Ex. 3. As part of this shift, Applied Komatsu

11   executed a "reduction in AKT's workforce" that included Dr. Demaray and others. *See* Dkt. 14-07,

12   Ex. F, ¶ 9.

13           To continue making new developments in thin film technologies, Dr. Demaray formed

14   Symmorphix shortly thereafter. Demaray Decl., ¶ 5. Given restrictive covenants in Applied

15   Komatsu's employment agreements, among other issues, Dr. Demaray approached Applied

16   Komatsu with his plans. *Id.,* ¶ 6. Symmorphix and Applied Komatsu entered into the Sales and

17   Relationship Agreement on December 11, 1998. *See* Dkt. 14-07, Ex. F (partial copy of the

18   agreement). Applied Komatsu agreed to release Dr. Demarary and other former AKTA employees

19   joining Symmorphix from broad restrictive covenants in their employment agreements that may

20   otherwise prevent them from working the field:

> Notwithstanding the presumption, contained within those certain written
> agreements with AKTA, that AKTA owns all inventions disclosed by AKTA
> employees and related to the work done for AKTA after leaving employment, the
> parties hereto agree that … AKTA does not own and shall not claim any right
> (other than the license grant to AKTA detailed in Section 3 … to intellectual
> property developed by Symmorphix on or after January 1, 1999.

25   *Id.* (internal Ex. C, ¶ 4). The parties confirmed this release verbatim in a January 29, 1999

26   amendment to the agreement. *Id.* (internal Amended Ex. C, ¶ 4).

27           On March 16, 2002, two and a half years after Dr. Demaray left Applied Komatsu, Dr.

28   Demaray and three other Symmorphix employees filed the application leading to the Demaray

patents reflecting innovations in advanced thin film deposition that they developed at Symmorphix.
Demaray Decl. ¶ 7. The patents generally relate to methods of depositing thin films, for example in
semiconductor devices, by pulsed DC reactive sputtering using "a pulsed DC power supply coupled
to the target" and "an RF bias power supply coupled to the substrate." *See* Ex. 1, claim 1. They
describe and claim the use of "a narrow band-rejection filter that rejects at a frequency of the RF
bias power supply coupled between the pulsed DC power supply and the target area." *Id.* The
narrow band rejection filter allows the power sources to properly function, but prevents damaging
feedback to the pulsed DC power source from the RF bias. *See id*, 1:49-51.

Dr. Demaray later discovered that Intel and Samsung were using his patented technology,
without authorization, to manufacture thin films in electronic devices. Demaray Decl. ¶ 11. These
semiconductor products consist almost entirely of layer-upon-layer of thin films engineered and
processed to create billions of interconnected transistors that together form microprocessors,
memories or other semiconductor devices. *Id.* Demaray therefore filed patent infringement suits
against Intel and Samsung in the Western District of Texas. Dkt. 13, Exs. A and B.

The named defendants in the Samsung suit include Samsung Austin Semiconductor, which
operates the semiconductor fabrication plant known as the "S2-Line" in the Western District of
Texas, where it uses manufacturing processes pertinent to the Texas actions. Ex. 4. Intel likewise
has a significant presence in the Western District of Texas maintaining an "Austin facility is a
research and development center for more than 1,700 employees." Ex. 5. Though not a party to the
Texas actions, Applied has two facilities for manufacturing and research in Austin, Texas
employing over 1,800 people. Exs. 6-7.

Because the Demaray patents concern methods of depositing high quality thin films in
products by using particular PVD reactor configurations, and are not directed at general PVD
reactors standing alone, Applied is not a defendant in the Texas cases. Intel and Samsung actually
use the claimed methods and determine the processes used to deposit thin films in their
semiconductor fabrication plants, having made the choice to use the claimed pulsed DC power
supply coupled to the target, RF bias on the substrate and a narrow band rejection filter as set forth
in the Demaray patent claims. Applied's reactors standing alone, in contrast, have many potential

10877827

non-infringing configurations and Applied has not alleged that it recommends or configures its PVD reactors as required by the claims. Demaray has accordingly never approached Applied about licensing the Demaray patents or accused Applied of infringement. Demaray Decl. ¶ 12.

## III.    DISCUSSION

### A.    The Court Lacks Subject Matter Jurisdiction Over Applied's Claims

As a threshold issue, Applied's FAC fails to state a proper basis for its declaratory judgment claims. "[W]hen ruling on a motion for a preliminary injunction, this Court must consider whether it has subject matter jurisdiction …." *Native Fed'n of the Madre De Dios River & Tributaries v. Bozovich Timber Prods.*, 491 F. Supp. 2d 1174, 1180 (2007). The party alleging jurisdiction bears the burden of showing an "actual controversy" warranting issuance of a declaratory judgment. *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007). In the patent context, "an actual controversy requires 'an affirmative act' by the patentee related to the enforcement of his patent rights." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). Contrary to Applied's assertions, merely filing a litigation by a patentee against a customer based on activities that involve the declaratory judgment plaintiff's product does not create a case or controversy. *See DataTern*, 755 F.3d at 904.

Applied does not contend that it anticipates any legal action from Demaray. Instead, Applied argues that it perceives "a cloud over Applied's business" (Mot. at 4) and has "come to the aid of its customers" (*id.* at 2) because of the Texas cases. "[D]eclaratory judgment jurisdiction will not arise merely on the basis that a party learns of the existence of an adversely held patent, or even perceives that such a patent poses a risk of infringement, in the absence of some affirmative act by the patentee." *Ass'n for Molecular Pathology,* 689 F.3d at 1319. Here, the required element of an affirmative act by Demaray directed at Applied is missing.

The Texas cases do not constitute an "immediate injury or threat of injury" to Applied. Demaray never approached Applied regarding a license to the Demaray patents and did not include Applied as a defendant in the Texas cases. Demaray Decl., ¶ 12; Dkt. 13, Exs. A-B. Nor did Demaray accuse Applied PVD reactors standing alone of infringement in the Texas cases— Demaray accused particular reactor configurations, and methods of depositing thin films using

them, of infringement in the Texas cases: "***Intel configures RMS reactors***, including, but not limited to reactors in the Endura product line from Applied Materials, Inc. …." *See* Dkt. 13, Ex. A, ¶25, Ex. B, ¶ 28 ("***Samsung configures RMS reactors***, including, but not limited to reactors in the Endura product line from Applied Materials, Inc. …."). In particular, Intel's and Samsung's use of a pulsed DC power supply coupled to the target, RF bias on the substrate and a narrow band rejection filter to deposit high quality thin films in its semiconductor devices is accused. *Id.* The Applied Endura reactors are merely examples of a PVD reactor configurable by third parties in an infringing manner. This is not a case where one entity makes an infringing product, and its customers are then sued for nothing more than purchasing and using it in the only way possible.

In its FAC, Applied argues that the Texas complaints gave rise to a controversy "as to whether Applied and/or Applied's products are infringing or have infringed the Asserted Patents." FAC, ¶ 12. Applied's FAC, however, contains no factual support for that conclusory assertion. Applied offers excerpts from the Texas pleadings, but selectively omits that what are accused are the ***specific configurations used by Intel and Samsung***. *See* FAC, ¶ 45 (Count 1), ¶ 50 (Count 2):

| Applied's FAC ¶ 45 (see also ¶ 50) | Demaray Intel Complaint ¶ 25 (Dkt. 13, Ex. A ¶25, Ex. B, ¶ 28) |
|---|---|
| "… in its complaints against both the Intel and Samsung Defendants, Demaray accuses the Defendants' use of 'RMS reactors' from 'the Endura product line from Applied Materials, Inc.'" | "***Intel configures RMS reactors***, including, but not limited to reactors in the Endura product line from Applied Materials, Inc. ("Applied Materials") for deposition of layers … in its semiconductor products." |

Applied then adopts its mischaracterization for the remaining Counts 3-5 regarding its licensing/ownership claims. *Id.,* ¶¶ 54, 58, 62. Conclusory pleadings based on misquotations of the factual record do not create a justiciable controversy.

Applied also relies on citation to Applied product literature in the Texas cases. *See* FAC ¶¶ 47, 52. But those citations also fail to show what Applied argues. Importantly, for example, Demaray does not cite Applied product literature to show that Intel and Samsung have chosen to configure their PVD reactors to use a narrow band rejection filter to prevent damaging feedback to the pulsed DC power source for the RF bias on the substrate. *See* Dkt. 13, Ex. A, ¶¶ 39-40, 57, Ex. B, ¶¶ 42-43, 59. To the contrary, Applied contends that its Endura PVD reactors "***do not*** comprise 'providing pulsed DC power to the target through a narrow band rejection filter …." FAC, ¶¶ 47,

52. According to Applied itself, therefore, the direct infringement allegations in the Texas complaints are directed squarely at Intel and Samsung, not Applied.[3]

Nor are there any assertions in the Texas complaints that Applied indirectly infringes the Demaray patents. Demaray acknowledges that Applied reactors standing alone have many non-infringing configurations (Demaray Decl. ¶ 12) and Applied makes no allegation whatsoever, in its FAC or its motion, that it is responsible for configuration of the Intel and Samsung PVD reactors accused in the Texas cases. Instead, Applied affirmatively asserts that has ***not*** "caused, directed, requested, or facilitated any [] infringement, much less with specific intent to do so." FAC, ¶ 27.

The Federal Circuit's reasoning in *DataTern* is on point. *DataTern* considered a complaint brought by two suppliers after the patentee filed suit against the suppliers' customers in Texas. The Court held that the plaintiff did not "have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement." *Id*., at 904. Instead, a "supplier has standing to commence a declaratory judgment action *if* ... there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Id.*

In *Datatern,* the patent owner provided two groupings of claim charts on which the alleged controversy was based, one group in which the patent owner relied of supplier "provided user guides and documentation for each claim element," and a second group where the infringement allegations did not rely upon supplier documentation for "key claim limitations." *Id*. The court found an adequate controversy existed as to the first group because the "claim charts show that SAP provides its customers with the ***necessary*** components to infringe." *Id.,* at 906. As to the second group, a controversy was lacking because the infringement read did not rely upon supplier documentation for "key claim limitations" and there were no other allegations supporting inducement or contributory infringement assertions against the supplier. *Id.* ("They cite exclusively

---

[3] As in *DataTern,* Applied also does not alleged that it has indemnity obligations to Intel or Samsung. Even if it did, the *DataTern* court made clear that in such instances, the supplier "must indemnify ***where a suit against these very same customers on all the same issues was already underway*** in a Texas court." *DataTern*, 755 F.3d at 904.

to third-party … documentation for several key claim limitations ….”). The fact that the supplier had not established indemnity obligations also weighed against a finding of jurisdiction. *Id.* at 904.

Demaray patent claims require using "a pulsed DC power supply coupled to the target" and "an RF bias power supply coupled to the substrate." *See, e.g.,* Ex. 1, claim 1. The claims also, importantly, require "a narrow band-rejection filter that rejects at a frequency of the RF bias power supply coupled between the pulsed DC power supply and the target area," which can prevent damaging feedback that can occur at the DC power source. *Id.*, claim 1. In the Texas cases, Demaray has not alleged that Applied uses this configuration to deposit thin films or cited to Applied documentation for this claim limitation. *See* Dkt. 13, Ex. A, ¶¶ 39-40, 57, Ex. B, ¶¶ 42-43, 59. As in *DataTern,* there is no allegation that Applied supplies the "necessary components" for infringement, *e.g.,* reactors configured with, for example, a narrow band-rejection filter. *Applied,* at 906. To the contrary, Applied contends that its Endura PVD reactors "***do not*** comprise 'providing pulsed DC power to the target through a narrow band rejection filter …." FAC, ¶¶ 47, 52. Similarly to *DataTern*, Demaray also has not alleged that Applied induces infringement or that the Applied reactors have no non-infringing use. *Datatern,* at 906 ("our review of the record does not uncover any evidence that Microsoft's ADO.NET is not suitable for substantial noninfringing uses …."); *see also Proofpoint, Inc. v. InNova Patent Licensing*, No. 5:11-cv-02288-LHK, 2011 WL 4915847, at *1 (N.D. Cal. Oct. 17, 2011) (no declaratory judgment jurisdiction where, even though claims against customer identified supplier's product, there was no "reasonable apprehension" of a suit for indirect infringement against the supplier).

Because Applied has not alleged facts sufficient to show a live case or controversy between Applied and Demaray, the motion should be denied for lack of subject matter jurisdiction.

**B.    Applied Has Not Proven Entitlement To The Extraordinary Remedy It Seeks**

Even if there was subject matter jurisdiction (there is not), Applied has not established that it is entitled to the extraordinary remedy it requests: an injunction halting both of Demaray's earlier-filed cases against Intel and Samsung, which are proceeding before Judge Albright in the Western District of Texas. "It is well-established that a preliminary injunction is an extraordinary remedy 'not to be routinely granted' and reserved only for those cases where it is clearly warranted." *Open*

*Text, S.A. v. Box, Inc*., 36 F. Supp. 3d 885, 891 (N.D. Cal. 2014) (J. Davila) (quoting *High Tech Med. Instrumentation Inc. v. New Image Indus., Inc*., 49 F.3d 1551, 1554 (Fed. Cir. 1995)). The injunction Applied seeks raises important additional comity concerns given the well-established precedent that federal district courts generally "avoid[] interference with the process of each other." *See, e.g., Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922). "While district courts do have the power to enjoin litigation in other districts, such injunctions 'will rarely be granted.'" *Axis Reinsurance Co. v. Northrop Grumman Corp*., No. 2:17-cv-08660-AB (JCx), 2018 U.S. Dist. LEXIS 222622, at *67 (C.D. Cal. June 21, 2018) (denying request to enjoin litigation in another district under first-to-file rule) (quoting *Del Mar Avionics v. Quinton Instruments Co*., 645 F.2d 832, 836 (9th Cir. 1981)). Neither (1) Applied's licensing/ownership declaratory judgment claims or (2) its non-infringement declaratory judgment claim in this case make it one of the "rare cases" warranting such an extraordinary remedy.

Despite seeking to enjoin another Article III court, Applied proclaims "the circumstances in this case present no comity concerns." Mot. at 18. The comity concerns are in fact quite significant. "When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require ***more than the usual measure of restraint***, and such injunctions should be granted ***only in the most unusual cases***." *Axis,* 2018 U.S. Dist. LEXIS 222622 at *6-7; *see also Del Mar*, 645 F.2d at 836 (same). The Federal Circuit has not endorsed enjoining related actions in other courts except under very limited circumstances, *e.g.,* in cases in which the issue between the cases overlap such that "resolution of ***the major issues***" would result from allowing just one case to proceed. *See Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed. Cir. 1990). As discussed below, there are major issues at issue in the Texas cases not at issue here.

The requested injunction is all the more unwarranted given that Applied has a readily available alternative that avoids these comity concerns. Applied could simply move to intervene in the Texas cases. Applied's own case law demonstrates that this is the more typical approach. *See* Mot. 18-20 (citing *Amazon.com, Inc. v. Corydoras Techs., LLC*, No. 1:19-cv-1095-RP, 2020 U.S. Dist. LEXIS 57969 (W.D. Tex. Apr. 2, 2020) ("*[T]he typical application* of the *customer-suit* exception ***does not involve such an injunction***, but rather 'courts apply[ing] the *customer suit*

10877827

exception to *stay* earlier-filed litigation against a customer while a later filed case involving the manufacturer proceeds in another forum."); Mot. at 9 (citing *Spread Spectrum Screening LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1360 (Fed. Cir. 2011) ("the district court stayed its *own* case and ***did not affirmatively prohibit litigation in any other court* ….*"); Mot. at 3, 8, 14, 16, 17 (citing *Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982) (affirming dismissal under first-to-file rule by court ***where action pending***)).

In its motion, Applied argues that each of the cases cited above "supports enjoining patentee." Mot. at 3, 9, 18-20. They do not. *Pacesetter* addressed dismissal of a declaratory judgment claim, not enjoining case proceeding in another court. 678 F.2d at 96. *Spread Spectrum* addressed a stay granted on an action pending before the granting court and specifically noted that it was not addressing a fact pattern involving an injunction request: "S3 did not seek a preliminary injunction." 657 F.3d at 1359. While *Amazon.com* involved an injunction request regarding an earlier-filed case, the *Amazon.com* court ***denied*** the "motion to enjoin Defendant Corydoras … from litigating certain patent claims in a customer suit in the Eastern District of Texas." 2020 U.S. Dist. LEXIS 57969, at *1. In doing so, the Court specifically called out that "[t]he dilemma of which court should order the cessation of litigation in the other ***raises significant issues of comity and procedural fairness***."**[4]** *Id.,* at *10. Applied argues "the [*Amazon*] court was presented with nearly identical circumstances" to this matter. Mot. at 18. As in *Amazon*, Applied's injunction request raises significant issues of comity and procedural fairness that support denial of the request.

## C. Applied Applies The Wrong Legal Standard In Requesting An Extraordinary Remedy Based Upon Unfounded Licensing/Ownership Claims

Applied does not apply the correct legal standard for a preliminary injunction when addressing its licensing/ownership claims. "Under Federal Circuit law, the court considers whether the plaintiff seeking a preliminary injunction can establish that: (1) he is likely to succeed on the

---

**[4]** While the court in the first-filed case at issue in *Amazon* had issued an order a denying a request for a stay at the time of the decision by the court in the second-filed case regarding an injunction risking directly contrary orders (*id.* at *11), the general concerns regarding comity expressed by the court in addressing the injunction request still apply to the facts at issue here.

1    merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

2    of equities tips in his favor; and (4) that an injunction is in the public interest." *Open Text,* 36 F.

3    Supp. at 891 (citing *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)). "These

4    traditional four factors 'apply with equal force to disputes arising under the Patent Act.'" *Id.*

5    (quoting *eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006)). In making the evaluation,

6    "[t]he first factor under *Winter* is the most important …." *Alfarah v. City of Soledad*, No. 5:15-cv-

7    05569-EJD, 2016 U.S. Dist. LEXIS 82624, at *11 (N.D. Cal. June 24, 2016) (J. Davila). Applied

8    fails to show that any of the *Winter* factors favor its motion.

9         Applied argues under the Federal Circuit's *Katz* decision that it need only put forth an

10   affirmative defense (*e.g.,* its ownership/licensing defenses), no matter how tenuous or baseless, that

11   is potentially dispositive of the infringement issues in the first-filed suit to warrant enjoining cases

12   in another Article III court. *See* Mot. at 10-11 ("If Applied prevails on the ownership or licensing

13   issues …."). That is not the law. Applied cites no case, and there is none, holding that objectively

14   baseless defenses such as Applied's licensing/ownership arguments warrant the extraordinary

15   remedy of enjoining an earlier-filed litigation in another Article III court.

16   **D.    Applied Bases Its Request Upon On Contract Provisions Already Adjudicated**
17   **In This District To Be Unlawful**

18        Applied makes conclusory assertions that its ownership/licensing defenses are "likely

19   dispositive of this action and the customer suits." Mot. at 10. Notably absent from its motion,

20   however, is any mention that Judge Ware already unequivocally ruled that the contract provisions

21   on which Applied bases is ownership/licensing defenses are "unlawful non-compete provisions"

22   and void as a matter of public policy under California Business & Professions Code § 16600. *See*

23   *Applied,* 630 F. Supp. at 1089. In *Applied,* Judge Ware ruled that the ***exact same assignment***

24   ***provision*** on which Applied now relies violated Section 16600 making such provisions void: "every

25   contract by which anyone is restrained from engaging in a lawful profession, trade, or business of

26   any kind is to that extent void." *Id.*, at 1089. The employment agreement provision required

27   assignment to Applied of "*any invention* … described in a patent application … within one (1) year

28   after terminating" that "*it is to be presumed* that the invention was conceived or made during

1  the period of [] employment for APPLIED...as provided by this agreement, provided it relates to []

2  work with APPLIED or any of its subsidiaries." *Id.*, at 1088.

3      Judge Ware held that "the Assignment Clause is overly broad with respect to both subject

4  matter and temporal scope." *Id.*, at 1090-1091. First, it was "not limited to inventions that are based

5  on [the former employer's] confidential information… Rather, the Assignment Clause broadly

6  targets any inventions 'relate[d] to' former employees' 'work.'" *Id.*, at 1090. Second, the

7  Assignment Clause was "deficient in that it [was] not limited to inventions conceived by former

8  Applied employees while employed at Applied." *Id.* The clause was thus void under Section 16600.

9  *Id.*, at 1091. Despite this prior ruling in a case to which Applied itself was a party, Applied asks this

10  Court to grant it an extraordinary equitable remedy ***without out even mentioning Judge Ware's***

11  ***opinion holding the exact same provision on which it now relies is unlawful***.

12      Applied first asserts ownership over the Demaray patents based upon an assignment

13  obligation in an alleged Applied employment agreement for one of the named inventors on the

14  Demaray patents, Mr. Narasimhan. *See* Mot. at 5-7, 10, 18. The provision on which Applied relies

15  is ***exactly the same*** as the provision Judge Ware ruled unlawful in *Applied*. *See* Dkt. 13 (FAC),

16  ¶ 25; *Applied* at 1088. Second, Applied makes similar assertions based upon alleged assignment

17  obligations from Applied Komatsu employment agreements for the other named inventors. Mot. at

18  5. These assignment provisions are even more egregious in that they lack even the 1-year post-

19  termination timing limitation (*see* FAC, ¶ 24 (text of provision)) that Judge Ware found to be

20  overly burdensome in *Applied*. The unlawful assignment provision from *Applied* and the two

21  provisions on which Applied now relies are reproduced below:

| Assignment Provision Held ***Unlawful*** By Judge Ware | Applied Provision (FAC, ¶ 25) | Applied Komatsu Provision (FAC, ¶ 24) |
|---|---|---|
| In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as | In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as | In case any invention is described in a patent application or is disclosed to third parties by me after terminating my employment with [Applied Komatsu], it is to be presumed that the invention was conceived or made during the period of my employment for |

| provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries. | provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries. | [Applied Komatsu], and the invention will be assigned to [Applied Komatsu] as provided by this Agreement, provided it relates to my work with [Applied Komatsu] or any of its subsidiaries. |

As can be seen, there is no substantive difference between the current Applied provisions and the provision ruled unlawful by Judge Ware that would save the provisions here. Third, Applied premises a license declaratory judgment claim on the same unlawful assignment obligations: "the amendment to the Sales and Relationship Agreement converted the assignment obligations under the former Applied Komatsu employees' employment agreements into a license …." Mot. at 6, 10; *see also* FAC, ¶ 53-64. Applied's unlawful contract provisions cannot support its ownership and licenses claims, much less justify the extraordinary remedy Applied seeks based on those claims.

Applied also fails to submit evidence supposedly underlying its licensing and ownership declaratory judgment claims. Even at the preliminary injunction stage, the Court considers evidence in light of the burdens that will apply at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). For issues on which the defendant will bear the burden of proof at trial, that burden also applies at the preliminary injunction stage. *Id.* Applied, for instance, has not submitted any of the Applied or Applied Komatsu employment agreements on which it relies, leaving Demaray and the Court to speculate on the actual content thereof. Indeed, in its FAC, Applied merely asserts that such agreements exist "[o]n information and belief." FAC, ¶ 23. Similarly, Applied's license defense is premised on a clause in the Symmorphix and Applied Komatsu Sales and Relationship Agreement beginning ***"[t]o the extent required by existing [Applied Komatsu] Employee Agreements with any Symmorphix personnel,*** Symmorphix grants to [Applied Komatsu] a non-assignable, non-transferable, non-exclusive, perpetual, royalty-free license…." Mot. at 6; FAC, ¶ 19. Pointing to unlawful provisions within agreements Applied fails to provide could not possibly justify the relief Applied seeks.

Given that Applied's licensing/ownership claims are based upon unlawful assignment provisions, Applied has not even stated a valid claim under Federal Rule of Civil Procedure

12(b)(6), let alone proven a substantial likelihood of success warranting a preliminary injunction. *See Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 U.S. Dist. LEXIS 52724, at *38-39 (S.D. Cal. Mar. 26, 2020) ("The nonsolicitation and noncompetition clauses are unenforceable under § 16600 and overly broad. Plaintiff cannot state a plausible claim based on Defendants' alleged breach of those clauses ....").[5] And Applied is estopped from re-litigating this issue, given the rulings in the *Applied* case. *Wenke v. Forest Labs., Inc.*, No. 5:14-cv-01898-EJD, 2018 U.S. Dist. LEXIS 68176, at *6 (N.D. Cal. Apr. 23, 2018) (J. Davila) ("In general, collateral estoppel precludes a party from relitigating issues litigated and decided in a prior proceeding.").

The other *Winter* factors also favor denial of Applied's motion. First, there is no irreparable harm (Factor 2) by allowing the Texas actions proceed. Intel and Samsung are both large companies with sophisticated counsel; the Texas actions are before Judge Albright, who is quite capable; and Applied has many other options including motions to intervene in those actions if it wants to be involved. While Applied points to cost issues and party resources (Mot. at 3, 12), Applied has not offered evidence that it is even required to indemnify Intel and Samsung. In short, Applied has not shown that it would be irreparably harmed if the Texas cases proceed.

Regarding the balance of equities (Factor 3), Applied seeks an extraordinary remedy raising comity concerns based on unlawful contract provisions and arguments on which it is estopped. *See, e.g.,* Mot. at 5-6. Applied also has the less drastic option of seeking to intervene in the Texas cases. This factor also favors denial of Applied's injunction request.

Regarding the public interest (Factor 4), the orderly administration of justice also favors allowing the Texas actions to proceed. "[J]udicial comity's 'underlying policy of judicial administration...counsels against the creation of conflicts,' particularly where they would work 'a grave disservice to the public interest in the orderly administration of justice.'" *Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc*., No. C-11-1892 EMC, 2012 U.S. Dist. LEXIS 112346, at *24 (N.D. Cal. Aug. 9, 2012) (denying motion to enjoin first-filed case). It is undisputed that Demaray filed the Texas actions first. *See* Mot. at 3. Under the first-filed rule, the Texas actions thus have

---

[5] Demaray expects that, when the time for pleading motions arrives, it will challenge the sufficiency of Applied's ownership and licensing claims under Rule 12(b)(6).

OPPOSITION TO APPLIED MATERIALS' MOTION FOR
PRELIMINARY INJUNCTION

10877827

priority that "should not be disregarded lightly." *Proofpoint, Inc. v. InNova Patent Licensing, LLC,* No. 5:11-CV-02288-LHK, 2011 U.S. Dist. LEXIS 120343, at \*18 (N.D. Cal. Oct. 17, 2011) ("the first-filed rule…should not be disregarded lightly."). The public has a strong interest in the orderly administration of justice, including the general principles that (1) federal district courts generally "avoid[] interference with the process of each other" (*Kline*, 260 U.S. at 229) and (2) that first-filed cases generally take priority. *See Tegic Communs. Corp. v. Bd. of Regents*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (in the context of separate suits involving manufacturer and customer, "the general rule that favors the forum of the first-filed action"). This factor thus also favors denial of Applied's injunction request.

Applied argues that the Texas actions are somehow "not the 'first-filed' action because [they] … do not involve the 'same parties' as this action." Mot at 15. In evaluating first-to-file issues, courts consider "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Proofpoint,* 2011 U.S. Dist. LEXIS 120343, at \*18 (addressing first-to-file rule in granting dismissal of a second-filed declaratory judgment action); *see also Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (articulating standard); *Futurewei Techs., Inc. v. Acacia Research Corp*, 737 F.3d 704, 706 (Fed. Cir. 2013) (consider whether the parties are "substantially similar"). Regarding the first factor, Applied concedes that Demaray filed the Texas actions first. *See* Mot. at 3. Regarding the second factor, "exact identity [of parties] is not required to satisfy the first-to-file rule." *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008); *Proofpoint,* at \*19; *see also Cisco Sys. v. TiVo, Inc.*, No. C 12-02766 RS, 2012 U.S. Dist. LEXIS 112923, at \*16 (N.D. Cal. Aug. 10, 2012) ("[t]he simplistic approach urged by Cisco, which essentially calls for comparing the parties listed on the dockets in the relevant actions and the dates each was filed, is of little assistance"); *Pacesetter*, 678 F.2d at 95 ("not a rigid or inflexible rule"). Moreover, Applied premises its motion on the argument that the same issues will arise against it as manufacturer and Intel/Samsung as customers. *See, e.g.,* Mot. at 16. Indeed, the "customer suit ***exception***" on which Applied relies is an exception predicated on application of the first-to-file rule in cases where customer suits are brought first and a manufacturer suit is brought second. Mot. at 16 (citing *Spread Spectrum*

*Screening*, 657 F.3d at 1357); *Tegic*, 458 F.3d at 1343 (in the context of separate suits involving manufacturer and customer, "the general rule that favors the forum of the first-filed action"). Regarding the third factor, Applied again argues that the cases involve "substantially identical issues." Mot. at 13. Thus, Applied's own arguments support the first-filed rule applying.

### E.    The Customer Suit Exception Does Not Warrant Enjoining The Texas Actions

Applied's secondary basis for its injunction request is the erroneous assertion that its non-infringement declaratory judgment claims will be dispositive of all "the major issues" in dispute in Texas because the Intel and Samsung suits are mere "customer suits." *See* Mot. at 4-5. The customer suit exception allows, "in certain patent cases," litigation brought by the manufacturer of infringing goods to take precedence over a suit by the patent owner against customers of the manufacturer. *Spread Spectrum*, 657 F.3d at 1357 (quoting *Katz*, 909 F.2d at 1464). When assessing if a case is one of those "certain patent cases," courts consider whether: (1) the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product.[6] *Tegic*, 458 F.3d at 1343. Every single one of these factors weighs against Applied's requested injunction.

### 1.    Intel And Samsung Are Not Mere Resellers Of Applied Reactors

Regarding the first factor, the issue in the Texas cases is Intel's and Samsung's use of the particular patented methods of thin film deposition, and PVD reactors with the particular configuration for those methods. The cases are not limited to reactors provided by Applied. Even if it were, Intel and Samsung are plainly not mere resellers of Applied's PVD reactors. Applied does not remotely suggest otherwise. To the contrary, it is undisputed that, as set forth in the Texas

---

[6] Applied does not use the framework from *Tegic*, but instead relies on a simplified test presented in *Spread Spectrum*— that "the manufacturer's case … have the potential to resolve the 'major issues' concerning the claims against the customer …." Mot. at 9 (citing *Spread Spectrum*, 657 F.3d at 1358 and *Katz*, 909 F.2d at 1464). The *Spread Spectrum* court cited to *Tegic* endorsing the reasoning therein. *Spread Spectrum*, 657 F.3d at 1357 (quoting *Tegic*, 458 F.3d at 1343).

complaints, both Intel and Samsung "**configur[e], or caus[e] to be configured, the Intel RMS reactors**" and then use those reactors themselves, as configured, to perform the processes that they choose to run in the course of manufacturing semiconductor devices. *See, e.g.,* Dkt. 13, Ex. A, ¶¶ 33-35, 39-40 (same), Ex. B, ¶¶ 36-38 (same for Samsung), 42-43 (same). Applied does not argue, much less present any evidence showing, that it is responsible for the infringing configuration of any of the Intel and Samsung PVD reactors purchased from Applied, let alone any such PVD reactors that Intel and Samsung purchase from other companies. This factor thus weighs squarely against application of the customer suit exception. *Tegic*, 458 F.3d at 1343 (that "the cellular-phone companies in the Texas action are not 'mere resellers' of products manufactured by Tegic" weighed against proceeding with declaratory judgment action*); Am. Acad. of Sci. v. Novell, Inc*., No. C-91-4300 EFL, 1992 U.S. Dist. LEXIS 20145, at *7 (N.D. Cal. July 9, 1992) ("where a patentee has a separate interest in litigating against the customer, the 'real party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable.").

Applied argues "the same products [are] at issue in the customer suits." Mot at 11. While Applied cites the Texas complaints when making this assertion (Mot. at 4), it omits the language "**Intel configures RMS reactors**" and "**Samsung configures RMS reactors**" from the quote it presents to the Court. *Compare* Mot. at 4 with Dkt. 13, Ex. A at ¶¶ 25–31, Ex. B at ¶¶ 28-34. Further, as discussed below, the Texas suits are expressly **_not_** limited to reactors from Applied. Mischaracterizations of the factual record are not a basis for an extraordinary remedy.

**2.    Intel's And Samsung's Supposed Agreement To Be Bound Would Leave Major Open Issues Unresolved**

Regarding the second factor, Applied suggests that Intel and Samsung have agreed to be bound by determinations regarding Applied's non-infringement declaratory judgment claim in Applied's FAC. Mot. at 11. But Applied's declaratory judgment claim applies only to "Applied's reactors." FAC, ¶ 47 ("Applied seeks a judgment declaring that **Applied's reactors**, including those in the Endura product line, do not directly or indirectly infringe …."), ¶ 52 (same). As discussed above, the infringement allegations in the Texas actions revolve around specific thin film deposition processes and configurations of reactors related thereto, and they are explicitly

OPPOSITION TO APPLIED MATERIALS' MOTION FOR
PRELIMINARY INJUNCTION

1   "*not limited*" to reactors provided by Applied. *See* Dkt. 13, Ex. A, ¶¶ 33-35, 39-40, Ex. B, ¶¶ 36-

2   38, 42-43. An infringement/non-infringement determination regarding reactors as supplied by

3   Applied, even if binding, would not necessarily address the specific reactor configurations used by

4   Intel and Samsung. Indeed, even as to just the Applied Endura PVD reactors, Applied asserts that

5   they "do not comprise 'providing pulsed DC power to the target through a narrow band rejection

6   filter such that the target alternates between positive and negative voltages' and/or 'providing an

7   RF bias at a frequency that corresponds to the narrow band rejection filter to the substrate.'" FAC,

8   ¶ 52. Applied presents no argument or evidence that it is responsible for the accused configuration

9   of the Intel and Samsung PVD reactors before or after purchase from Applied.

10       In addition, Applied has not submitted any alleged Intel/Samsung agreements to be bound to

11  Demaray or the Court, so again the parties and the Court are left to speculate on the actual content

12  thereof. Notably, however, Applied is also silent on whether Intel and Samsung agree to be bound

13  by any validity or enforceability decisions made in this case, or whether those decisions would be

14  on the same validity and enforceability issues to be addressed by the Texas court; indeed, Applied

15  has not raised any validity or enforceability arguments at all in this case. This is another reason why

16  Applied's assertions about supposed agreements to be bound are unavailing.

17       Applied cites *Katz* and *Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14-cv-02043-

18  CAS(RNBx), 2015 U.S. Dist. LEXIS 75965, at *16 (C.D. Cal. June 9, 2015) for the proposition

19  that "such an agreement [to be bound is] highly relevant to the propriety of granting a stay in patent

20  cases involving defendants in different levels of commerce." In *Katz*, the court held that "major

21  issues before that court, including patent infringement, patent validity, and Mr. Katz' capacity to

22  sue, will resolve these issues as to their customers." 909 F.2d at 1464. As discussed above, the

23  present action is quite different in that (among other things) Applied does not allege that Intel and

24  Samsung have agreed to be bound regarding specially configured reactors and the use of such

25  reactors or on validity or enforceability issues. Moreover, *Sillage* involved a simple "purchasing

26  and reselling" arrangement and thus the court found it "hard to imagine a situation in which

27  litigation against the distributor would not resolve [the issues]." 2015 U.S. Dist. LEXIS 75965, at

28  *18. Intel and Samsung are not mere resellers of Applied reactors; indeed, they are not resellers at

1   all. These cases do not to support Applied.

2          **3.        Applied Does Not Allege Or Show That It Is The Only Intel And**

3                   **Samsung PVD Reactor Supplier**

4          For the third factor, Applied acknowledges that in the Intel and Samsung suits "Demaray

5   appears to suggest there may be infringing reactors made by manufacturers other than Applied …."

6   Mot. at 4, n. 1. That is an understatement. Demaray's complaints against Intel and Samsung are

7   explicit that Applied reactors are a mere example of reactors that Intel and Samsung can use in an

8   infringing manner: "[a]s an example, on information and belief, Intel configures RMS reactors,

9   ***including, but not limited to*** reactors in the Endura product line from Applied Materials, Inc. …."

10  *See, e.g.,* Dkt. 13, Ex. A, ¶ 25. The fact that the Texas actions are not limited to Applied PVD

11  reactors weighs heavily against staying the Texas actions. *Tegic*, 458 F.3d at 1343 ("Tegic is not the

12  only source of the software used in the phones alleged to infringe -- the Texas action involves other

13  software vendors …."); *Proofpoint*, 2011 U.S. Dist. LEXIS 120343, at *19-22 n.5 ("resolving

14  Proofpoint's declaratory judgment claims would not 'resolve all charges' against the customers in

15  the Texas Action because Proofpoint is not the only supplier of allegedly infringing technology.");

16  *Microchip Tech., Inc. v. United Module Corp.,* No. CV-10-04241-LHK, 2011 U.S. Dist. LEXIS

17  73276, at *17 (N.D. Cal. July 7, 2011) ("DJ Plaintiffs do not suggest that SST is the only

18  manufacturer of the relevant technology. Thus, resolution of this action would not 'resolve all

19  charges against customers' in the first-filed action.").

20         Applied attempts to downplay this significant problem for its requested injunction by

21  arguing "Demaray did not identify any other manufacturer or otherwise confirm that any other

22  manufacturer exists." Mot. at 4, n.1. But of course Demaray had no obligation to prove its entire

23  case in its complaints, which are explicitly "not limited to" reactors from Applied. *See, e.g.,* Dkt.

24  13, Ex. A, ¶ 25. Applied is coordinating its actions with Intel and Samsung. Mot. at 12*,* n. 3. If all

25  Intel and Samsung PVD reactors were supplied by Applied, Applied could easily have said so.

26  Applied has made no such assertion, let alone provided evidence that would support such a claim.

27         Public sources confirm that there are many other suppliers of PVD reactors to the

28  semiconductor industry. *See, e.g.,* Exs. 8-9 (Angstrom Engineering PVD platform with optional

power sources and substrate biasing); Exs. 10-11 (ULVAC system "specifically designed for the 300mm Semiconductor market," including optional pulsed DC power supplies and substrate biasing); Exs. 12-13 (Denton Vacuum PVD platform that accommodates pulsed DC and RF sputtering). Applied admits that it has competition in the PVD market. Ex. 14 ("… we outperformed the market in both semiconductor equipment and services last year. Our performance in deposition technology was especially strong with our PVD business gaining 7 points of share."). Market analysts confirm as much: "[k]ey [PVD] companies…include Applied Materials, Inc.…Intevac, Inc., Advanced Energy Industries, Inc., Kurt J. Lesker Company, AJA International, Inc., Angstrom Engineering, Inc., CHA Industries, Inc., Denton Vacuum LLC, and PVD Products, Inc." Ex. 15. Because the Intel and Samsung cases are not limited to Applied reactors, the third factor also weighs against applying the customer suit exception.

### 4.    Major Issues Present In Texas Are Lacking From The Present Case

When considering customer suit arguments, courts look at whether the alleged manufacturer's case will resolve "***the major issues*** concerning the claims against the customer."[7] *Spread Spectrum,* 657 F.3d at 1358 (citing *Katz,* 909 F.2d at 1464). This analysis also weighs against Applied's requested injunction, as the Texas actions involve a numerous significant issues that will not be resolved by Applied's claims. For example, the Texas action involves direct infringement allegations against Intel and Samsung of method claims in the '657 patent. Dkt. 13, Ex. A, ¶¶ 48-67, Ex. B, ¶¶ 54-69. Courts generally decline to apply the customer-suit exception where, as here, the customer is accused of directly infringing method claims. *See, e.g., Am. Acad. Of Sci.*, 1992 U.S. Dist. LEXIS 20145, at *2 (declining to apply the customer-suit exception "[where the] patent owner seeks to hold the manufacturer liable solely on a theory of inducement/contributory infringement, claiming direct infringement only against the customer"); *see also Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 U.S.

---

[7] Applied argues that this action "need not resolve all issues presented in the [Texas cases]" (Mot. at 9) and "[t]o the extent there are lingering questions to be resolved in the customer suits, Demaray can resume the customer suits" later (*id.,* at 12). That is not the law. To warrant delaying the first-filed case, "the major issues" must be resolved.

Dist. LEXIS 55205, at *9 (E.D. Tex. Apr. 26, 2016) (collecting cases).[8] In addition, not at issue in this case is how Intel and Samsung configure the Applied reactors. Even if Applied succeeded with its non-infringement claim for its reactors, the question would remain whether Intel and Samsung configure and/or use the reactors in an infringing manner. If Applied fails in its non-infringement claims, the question of infringement by Intel and Samsung using other reactors and damages based on the value of the inventions to Intel and Samsung, not Applied, would remain.

Similarly, the Texas actions against Intel and Samsung involve invalidity and unenforceability issues not at issue in this matter. Ex. 16 (Intel Answer), ¶¶ 76. 85. Applied has not sought a declaratory judgment claim for invalidity or unenforceability. *See* FAC. While Applied asserts that Intel and Samsung "agree to be bound by the result in this action regarding the declaratory judgment causes of action asserted in Applied's FAC" (Mot. at 11), Applied says nothing regarding validity or enforceability challenges that have been raised in the Texas cases. Courts have refused to apply the customer suit exception on this basis. *See Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-cv-909, 2015 U.S. Dist. LEXIS 675, at *3-5 (E.D. Tex. Jan. 6, 2015) (declining to stay case where customers did not disclaim their right to challenge invalidity); *Corydoras Techs., LLC v. Best Buy Co.*, No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578, at *10 (E.D. Tex. Mar. 16, 2020) ("Given that invalidity is not addressed in that case, Amazon's declaratory judgment action is even less likely to resolve major issues in the case."); *Telebrands Corp. v. Nat'l Exp., Inc.*, No. 12-6671, 2014 U.S. Dist. LEXIS 140279, at *5 (D.N.J. Oct. 2, 2014) (finding it more efficient to proceed with first-filed case where question of patent validity raised in earlier suit); *Ultra Prods., Inc. v. Best Buy Co.*, No. 09-1095, 2009 U.S. Dist. LEXIS 78678, at *5 (D.N.J. Sept. 1, 2009) (same); *RegenLab USA LLC v. Estar Techs. Ltd.*, No.

---

[8] Some courts have held that this is not a hard rule if the infringement is not "predicated upon the specific implementations of [the]…technology." *See Berkeley*IEOR v. Teradata Operations, Inc.,* No. 17 C 7472, 2019 U.S. Dist. LEXIS 36563, *19-20 (N.D. Ill. March 7, 2019). But, the Intel and Samsung complaints make clear that the products reactors have specific configurations involving pulsed DC power supplies and associated filters—*i.e.,* a specific implementation of the technology. Dkt. 13, Ex. A, ¶¶ 56-57, Ex. B, ¶¶ 58-59.

1    16-cv-08771 (ALC), 2017 U.S. Dist. LEXIS 131495, at *8-9, n. 3 (S.D.N.Y. Aug. 17, 2017) (late

2    addition of invalidity claims to manufacturer suit weighed against injunction).

3              **5.      Applied Again Applies The Wrong Legal Standard**

4              Applied misapplies the applicable standard for an injunction based upon customer suit

5    rationales to argue that its non-infringement allegations alone warrant enjoining the Texas actions.

6    Mot. at 9 ("a finding of non-infringement as to Applied's products would be dispositive of the

7    majority—if not all—of the infringement issues in the customer suits …."). First, as discussed

8    above, Applied's FAC is directed at Applied reactors, not reactors as configured by the Texas

9    defendants. FAC, ¶¶ 47, 52. Second, Applied presents a fragment from the Federal Circuit's *Katz*

10   decision in isolation (Mot. at 9 quoting *Katz,* 909 F.2d at 1463 ("the disposition of one case would be

11   dispositive of the other")), omitting context making clear that Katz did not fundamentally alter the

12   law as Applied argues. To the contrary, consistent with longstanding precedent, *Katz* court endorsed

13   a stay where "resolution of the major issues" would be resolved in the alleged manufacturer suit.

14   *Katz*, 909 F.2d at 1464; *see also Spread Spectrum,* 657 F.3d at 1358 (overlap in the "major issues"

15   is the focus of the analysis). Applied also cites a series of Federal Circuit writs of mandamus

16   ordering district courts to stay customer suits. Mot. at 8. But, in each of those cases, the Federal

17   Circuit similarly determined that the later-filed case would resolve the major issues in the alleged

18   customer suit. *See, e.g.*, *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014) ("the 'major

19   premises'" were being litigated in the other actions); *In re Nintendo of Am., Inc.*, 756 F.3d 1363,

20   1366 (Fed. Cir. 2014) ("the issues of infringement and validity are common" to the actions). Such

21   facts are not present here.

22             Other decisions underscore why Applied's sentence fragment from Katz cannot be taken out

23   of context as overturning settled law, and that requests for injunctive relief still need to be evaluated

24   using traditional principles. In *eBay,* for instance, the Supreme Court reversed the Federal Circuit

25   based on a similar rule holding that familiar equitable principles "apply with equal force to disputes

26   arising under the Patent Act" and "major departure[s] from the long tradition of equity practice

27   should not be lightly implied." *eBay,* 547 U.S. at 391.[9] This reasoning is applicable to alleged

28   ────────────────────────
              **[9]** *See also, e.g., Finisar Corp. v. Cheetah Omni, LLC,* No. 11-cv-15625, 2012 U.S. Dist.

customer suits as well: "'broad classifications' and 'categorical rule[s]' have no place in [the injunction] inquiry. Instead, courts are to exercise their discretion in accordance with traditional principles of equity." *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). As with its licensing/ownership claims, because Applied fails to apply the traditional preliminary injunction factors (disregarding, for instance, its burden to prove likely success on the merits), its motion should be denied.

For example, Applied presents no evidence that its non-infringement declaratory judgment claim will be successful, resting instead on mere allegations in the FAC. *See* Mot. at 10-11. But then in its FAC, Applied asserts that its Endura PVD reactors "**do not comprise** 'providing pulsed DC power to the target through a narrow band rejection filter such that the target alternates between positive and negative voltages' and/or 'providing an RF bias at a frequency that corresponds to the narrow band rejection filter to the substrate" (FAC, ¶ 52)—multiple core features that subjected the Intel and Samsung reactor configurations to suit in Texas. Applied fails to meaningfully address whether, much less offer evidence proving, that reactors **as configured and used by Intel and Samsung** do not infringe Demaray's patents. Indeed, Applied offers virtually no evidence at all regarding how either its own reactors, or those of Intel and Samsung (whether supplied by Applied or another manufacturer), relate to the claimed inventions. *See Titan Tire,* 566 F.3d at 1376 (even at the preliminary injunction stage, the Court considers evidence in light of the burdens that will apply at trial). Further, as discussed above in Section III.D, the other preliminary injunction factors weigh against enjoining the Texas actions.

### F.    Convenience Factors Do Not Favor One Forum Over The Other

Applied's request that the Court delve into motion to transfer convenience factors in evaluating its preliminary injunction request is improper. Neither the traditional factors for a preliminary injunction (*Open Text,* 36 F. Supp. at 891) or an alternative test evaluating overlap of "the major issues" under *Katz/Spread Spectrum* include such an analysis. The only injunction-related precedent that Applied cites in support of its position is a 1977 case from the 1st Circuit,

LEXIS 198501, *3 (E.D. Mich. Nov. 19, 2012) (if *Katz* purported to establish an alternative standard for preliminary injunctions, *Katz* was overruled by the Supreme Court in *eBay*).

1    *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). Obviously, that case is

2    not binding on this Court. Moreover, *Codex* evaluated convenience factors in evaluating venue, not

3    in evaluating an alleged customer suit exception. *Id.* Another case on which Applied relies,

4    *Pacesetter*, is more informative. *See* Mot. at 17 (citing *Pacesetter*, 678 F.2d at 96). In denying the

5    appeal of a dismissal of declaratory judgment claims, the appellant tried to raise convenience

6    factors. *Pacesetter,* 678 F.2d at 96. The *Pacesetter* court rejected those efforts, stating: "normally

7    the *forum non conveniens* argument should be addressed to the court in the first-filed action.

8    Apprehension that the first court would fail to appropriately consider the convenience of the parties

9    and the witnesses should not be a matter for our consideration." *Id.* If convenience factors need to

10   be evaluated, Intel and Samsung can raise those issues in the Texas cases.

11       Applied's claim that the convenience issue is cut and dry (Mot. at 18) is not only irrelevant

12   to this motion, but incorrect. Briefly, for instance, Samsung's only domestic fab is located in

13   Austin, Texas. Ex. 4. Intel likewise has an "Austin facility is a research and development center for

14   more than 1,700 employees." Ex. 5. Indeed, Applied itself has two facilities for manufacturing and

15   research in Austin, Texas employing over 1,800 people. Exs. 6-7. In contrast, Applied points to "a

16   large U.S. office in Northern California" for Samsung, but that facility houses "SSIC's automotive,

17   digital health, data center, and IoT innovation projects." Dkt. 13, Ex. J. It is not clear that those

18   activities have any relation to the PVD-based semiconductor manufacturing issues raised in the

19   Texas suits.

20       Applied also argues that there may be some overlap in "potential pleadings motions, fact

21   discovery, claim construction, expert reports, expert discovery, dispositive motions, and trial"

22   between the three actions. Mot. at 18. Again, that is legally irrelevant here, and in any event there

23   are numerous ways for the parties and the Court to agree on methods of streamlining these cases.

24   Judge Albright is capable of managing his docket to avoid unnecessary duplication of effort. If Intel

25   or Samsung want to raise Applied's baseless ownership/licensing defenses, they can attempt that in

26   Texas or Applied could seek to intervene.

27       Because Applied has taken the position that the infringement issues to be addressed in the

28   Texas cases will resolve the infringement issues here (*see, e.g.,* Mot. at 11), Applied can agree to be

bound by any infringement decisions there or this Court can decline subject matter jurisdiction regarding Applied's third-filed non-infringement declaratory judgment claims. As discussed above, under the "first-to-file rule," the Court can stay or dismiss an action when a similar complaint has already been filed in another district to "serve[] the purpose of promoting efficiency" and comity with other districts. *Alltrade,* 946 F.2d at 625; *Pacesetter*, 678 F.2d at 95; *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) (comity was foundation for first-to-file rule, permitting one district to decline judgment on an issue which is properly before another district). Moreover, even where facts supporting jurisdiction exist, the Declaratory Judgment Act is permissive, not mandatory. *Proofpoint*, 2011 WL 4915847, at *6-7 ("Even if the Court were to find that declaratory jurisdiction might be proper, it would nevertheless be prudent to decline jurisdiction given the pendent Texas Action … Although the first-filed rule is not clearly applicable here because Proofpoint is not a party to the Texas Action, [] the focus on judicial efficiency that underlies both the first-filed rule and the transfer analysis plainly supports the Court's decision to decline jurisdiction.").

Having this Court exercise jurisdiction over the matter and allowing it to proceed would in fact be the ***least efficient*** approach to resolving the actual disputes, as it would guarantee overlapping proceedings on infringement issues. *See Amazon,* 2015 WL 3486494, at *8 ("the Virginia court will already have to commit significant resources to learning the relevant technology in this case" and "allowing this case to continue in California will only duplicate the workload of the courts ... and risk conflicting decision by sister courts"). Thus, consideration of the public interests and judicial economy provide a compelling basis to decline jurisdiction even if the Court were to find that a case or controversy exists. Declining jurisdiction would allow the first-filed Texas cases to proceed and alleviate any perceived concerns regarding the potential for conflicting rulings.

## IV.    <u>CONCLUSION</u>

Applied's suit is without subject matter jurisdiction. Moreover, Applied has come nowhere near establishing that an injunction halting earlier-filed cases in another district court is "clearly warranted." The "extraordinary remedy" Applied seeks should be denied.

1

2    Dated: September 25, 2020                          Respectfully submitted,
                                                        IRELL & MANELLA LLP
3

4                                                       By: /s/ C. Maclain Wells
                                                            C. Maclain Wells
5                                                           Attorneys for Defendant DEMARAY LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28