REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

YAR R. CHAIKOVSKY (SB# 175421)
yarchaikovsky@paulhastings.com
PHILIP OU (SB# 259896)
philipou@paulhastings.com
ANDY LEGOLVAN (SB# 292520)
andylegolvan@paulhastings.com
JOSEPH J. RUMPLER, II (SB# 296941)
josephrumpler@paulhastings.com
BERKELEY FIFE (SB# 325293)
berkeleyfife@paulhastings.com
BORIS LUBARSKY (SB# 324896)
borislubarsky@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:  1(650) 320-1800
Facsimile:  1(650) 320-1900

Attorneys for Plaintiff
APPLIED MATERIALS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MATERIALS, INC., | CASE NO. 5:20-cv-05676-EJD |
| Plaintiff, | **APPLIED MATERIALS, INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN DEMARAY LLC FROM PROCEEDING WITH CUSTOMER SUITS DURING THE PENDENCY OF THIS ACTION** |
| vs. | |
| DEMARAY LLC, | |
| Defendant. | **Hearing Date: November 12, 2020**<br>**Hearing Time: 9:00 a.m.** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

   A.   The Court Has Subject Matter Jurisdiction Over Applied's Claims...................... 2

      1.   Demaray's Allegations Establish a Reasonable Potential It Could
           Bring Direct Infringement Claims Against Applied .................................... 3

      2.   Demaray's Allegations Establish a Reasonable Potential It Could
           Bring Inducement and Contributory Claims Against Applied.................... 5

   B.   The *Katz* Framework Applies to the Question of Whether to Issue a
        Preliminary Injunction—not *eBay's* Traditional Four-Part Test ........................... 7

   C.   Applied's Noninfringement Claims of the Asserted Patents Will Be
        Dispositive of the Major Issues in the Customer Suits .......................................... 7

   D.   Applied's License and Assignment-Based Noninfringement Claims Will
        Resolve the Customer Suits ................................................................................. 10

      1.   The License Grant in the SRA Is Valid and Enforceable ........................ 11

      2.   The Employee Assignment Provisions Are Valid and Enforceable ......... 11

   E.   Demaray's Remaining Arguments Are Unavailing, but Rather Confirm the
        Customer Suits Should Be Enjoined Under *Katz*.................................................. 13

III.  CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Corydoras Techs., LLC,*
No. 1:19-cv-1095, 2020 U.S. Dist. LEXIS 57969 (W.D. Tex. Apr. 2, 2020) .....................9, 15

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.,*
630 F. Supp. 2d 1084 (N.D. Cal. 2009) ................................................................11

*Arris Group, Inc. v. British Telecomm. PLC,*
639 F.3d 1368 (Fed. Cir. 2011)..........................................................................5, 6

*Bal Seal Eng'g, Inc. v. Nelson Prods.,*
2016 U.S. Dist. LEXIS 195915 (C.D. Cal. Sep. 8, 2016)............................................8

*Bd. of Trs. v. Roche Molecular Sys.,*
583 F.3d 832 (Fed. Cir. 2009)...............................................................................12

*Berkeley*IEOR v. Teradata Operations, Inc.,*
No. 17 C 7472, 2019 U.S. Dist. LEXIS 36563 (N.D. Ill. Mar. 7, 2019) .............................9, 10

*Cadence Design Sys. v. OEA Int'l, Inc.,*
No. CV11-0713, 2011 U.S. Dist. LEXIS 106739 (N.D. Cal. Sep. 19, 2011)...........................8

*Codex Corp. v. Milgo Elec. Corp.,*
553 F.2d 735 (1st Cir. 1977) .................................................................................13

*DermaFocus LLC v. Ulthera, Inc.,*
201 F. Supp. 3d 465 (D. Del. 2016) ...........................................................................6

*Dolby Labs., Inc. v. Intertrust Techs. Corp.,*
No. 19-cv-03371-EMC, 2019 U.S. Dist. LEXIS 194022 (N.D. Cal. Nov. 6, 2019) .................................................................................................................5

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006).................................................................................................7

*In re Google Inc.,*
588 F. App'x 988 (Fed. Cir. 2014) ..........................................................................14

*Google Inc. v. Rockstar Consortium U.S. LP,*
No. C 13-5933 CW, 2014 U.S. Dist. LEXIS 53757 (N.D. Cal. Apr. 17, 2014) .....................13

*Gray Mfg. Co. v. Ashburn Volunteer Fire & Rescue Dep't,*
No. 3:19-cv-801, 2020 U.S. Dist. LEXIS 145886 (E.D. Va. Aug. 12, 2020)...........................8

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*Hoffmann-La Roche Inc. v. Promega Corp.*,
No. C-93-1748, 1994 U.S. Dist. LEXIS 10174 (N.D. Cal. June 13, 1994) ..........................6, 12

*Kahn v. GMC*,
889 F.2d 1078 (Fed. Cir. 1989) ....................................................................................13, 14

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) ............................................................................... *passim*

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
2018 U.S. Dist. LEXIS 103365 (N.D. Ill. June 20, 2018) .......................................................10

*Mass Eng. Des., Inc. v. Planar Sys.*,
426 F. Supp. 3d 680 (D. Or. 2019) ................................................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ...............................................................................................2

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014)...........................................................................2, 4, 6

*In re Nintendo of Am., Inc.*,
756 F.3d 1343 (Fed. Cir. 2014) ...................................................................1, 8, 9, 13

*Ours Tech., Inc. v. Data Drive Thru, Inc.*,
645 F. Supp. 2d 830 (N.D. Cal. 2009) ............................................................................2

*Pacesetter Sys. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982)......................................................................................14

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
463 F. Supp. 2d 949 (N.D. Iowa 2006) ......................................................................7, 10

*RegenLab USA LLC v. Estar Techs. Ltd.*,
No. 16-cv-8771, 2017 U.S. Dist. LEXIS 131495 (S.D.N.Y. Aug. 17, 2017)............................7

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011)....................................................................................1

*Tegic Communs. Corp. v. Bd. of Regents*,
458 F.3d 1335 (Fed. Cir. 2006)....................................................................................8

*TransCore v. Elec. Trans. Consult. Corp.*,
563 F.3d 1271 (Fed. Cir. 2011).....................................................................................8

*USGA v. Arroyo Software Corp.*,
69 Cal. App. 4th 607 (1999) .....................................................................................13

*Valley View Health Care, Inc. v. Chapman*,
992 F. Supp. 2d 1016 (E.D. Cal. 2014)..........................................................................13

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

*Whitewater W. Indus., Ltd. v. Alleshouse*,
    No. 17-cv-00501, 2019 U.S. Dist. LEXIS 163168 (S.D. Cal. Mar. 26, 2019) ........................12

**Statutes**

Bus. & Prof. Code § 16600 ...........................................................................................12

Lab. Code § 2870 .......................................................................................................12

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

## I.    **INTRODUCTION**

In its Motion, Applied demonstrated that the "customer suit" framework of *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) applies and its right to relief is clear: "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1343, 1365 (Fed. Cir. 2014). Here, in response to infringement suits against Applied's customers, Intel and Samsung, based on their use of Applied's Endura reactors and alleged instruction from Applied's product literature, Applied filed a declaratory action for noninfringement of the same Asserted Patents and by the same accused products in Demaray's customer suits. Applied's claims must take precedence.

Under *Katz*, adjudication of Applied's claims will resolve the "major issues" in the Intel and Samsung customer suits. If this Court adjudicates noninfringement claims based on license or assignment defenses in Applied's favor, that judgment will ***fully*** dispose of both this action and the customer suits. But regardless of the outcome, this Court's adjudication of those claims in this case will resolve the same defenses brought by Samsung and Intel in the customer suits. In addition, resolution of Applied's noninfringement claims of the Asserted Patents on the merits will also significantly advance and dispose of major issues in the customer suits, including claim construction and the extent to which Applied's activities and product features infringe the Asserted Patents, if at all. In short, resolution of this action will be dispositive of, or largely resolve, the "major issues" in the customer suits, and is the most efficient manner to resolve all actions. Injunction of Demaray's suits against Intel and Samsung is appropriate: "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

Instead of taking on the *Katz* framework—an implicit admission of its applicability here—Demaray attempts to distract the Court with (1) unfounded Article III jurisdictional challenges, and (2) the *eBay* test for injunctions on the merits—which "does not apply to the different question of whether to enjoin the *prosecution of concurrent litigation*." *Katz*, 909 F.2d at 1463

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1   (emphasis added).  For jurisdiction, an Article III controversy exists because Mr. Demaray has

2   previously attempted to license the Asserted Patents to Applied, and Demaray's allegations

3   against Applied's customers rely ***exclusively*** on Applied's products and literature to support

4   infringement, creating a reasonable potential it could bring direct and indirect infringement claims

5   against Applied. Demaray's contention that the traditional *eBay* injunction test—and not the *Katz*

6   framework—should apply, fundamentally misconstrues the *eBay* decision. Accordingly, Applied

7   respectfully requests that the Court grant its Motion.

8   **II.    ARGUMENT**

9          **A.    The Court Has Subject Matter Jurisdiction Over Applied's Claims**

10         Demaray argues this Court lacks subject matter jurisdiction because Demaray has not

11  expressly accused Applied of infringement. Opp. at 5–8. Demaray misapplies the standard.

12  Demaray's customer-suit complaints repeatedly cite to Applied's reactors, product literature, and

13  configuration features as the basis for infringement—and doing so establishes a reasonable

14  potential Demaray could bring direct and indirect infringement claims against Applied.

15         The threshold question is "whether the facts alleged, under all the circumstances, show

16  that there is a substantial controversy, between parties having adverse legal interests, of sufficient

17  immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v.*

18  *Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). If a supplier's declaratory judgment

19  jurisdiction is based on a patentee's suit against a customer, the requirements are met if the

20  customer suit includes an "implied assertion" of infringement against the supplier. *Microsoft*

21  *Corp. v. DataTern, Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014). All that is required are "allegations

22  by the patentee or other record evidence" in the customer suit establishing "a reasonable

23  potential" a claim against the supplier could be brought. *Id.* at 904; *see Ours Tech., Inc. v. Data*

24  *Drive Thru, Inc.*, 645 F. Supp. 2d 830, 834 (N.D. Cal. 2009) ("reasonable apprehension").

25         As an initial matter, Demaray claims it has "never approached Applied about licensing the

26  Demaray patents." Opp. at 5; Demaray Decl. ¶ 12. That is demonstrably false. In fact, Mr.

27  Demaray approached Applied to license the Asserted Patents and other intellectual property. *See*

28  Ex. K to Supp. Lubarsky Decl. Even if the customer suits alone did not establish a reasonable

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

potential that Demaray could bring claims against Applied, Mr. Demaray's own actions provide

evidentiary support that an Article III controversy exists.

### 1. Demaray's Allegations Establish a Reasonable Potential It Could Bring Direct Infringement Claims Against Applied

Demaray's *exclusive* identification of Applied's Endura reactors and reliance on

Applied's product materials, website, and literature (including screenshots of Applied's systems)

in its customer-suit complaints create an implied assertion of infringement against Applied and

establish a reasonable potential that Demaray could bring direct infringement claims against

Applied based on those same allegations. *See* Ex. A to FAC at ¶ 25 (screenshot of Applied's

Endura reactor from Applied's website and citing to various Applied product materials, including

an Endura reactor brochure, a journal article written by Applied employees regarding TaN

deposition chambers, and an Applied presentation on TiN deposition chambers); *see also id*. at ¶¶

28, 31, 35, 37, 55, 62, 63, 65, 67; Ex. B to FAC at ¶¶ 28, 31, 34, 37, 38, 40, 54, 57, 61, 64, 65, 67,

69. Although Demaray contends its claims relating to the '276 patent are based on Intel and

Samsung's alleged "configurations," Opp. at 5–6, Demaray points to <u>Applied</u> system features and

configurations—<u>not</u> Intel or Samsung—to support its infringement contentions. Demaray's

allegations establish more than a reasonable potential that it could assert that Applied's reactors,

by themselves, satisfy these claim limitations, and therefore could bring a claim against Applied.

Demaray's assertion that Intel and Samsung perform these "configurations" is

unsupported in its complaints, and Demaray provides no evidentiary support for that claim in its

Opposition. Instead—highlighting its focus on Applied products and materials—Demaray points

to the "pulsed DC power supply" and "narrow band-rejection filter" limitations of the '276 patent,

the sole limitations for which Demaray does not expressly reference Applied's products and

product materials. *See* Opp. at 8. But notably, Demaray's allegations regarding Intel and

Samsung's alleged "configuration" of the "pulsed DC power supply" and "narrow band-rejection

filter"—similar to Demaray's allegations of "configuration" for other components—lack <u>any</u>

citation to product materials or evidence as to who performs the configuration. *Compare* Ex. A to

FAC at ¶¶ 36, 39, *with id*. at ¶¶ 25, 26. When viewed as a whole, not just as a disembodied claim

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

limitation devoid of evidence, the implied assertion in Demaray's complaints is clear: *Applied*'s reactors necessarily or inherently include both of these features. *See DataTern*, 755 F.3d at 903.

In particular, Demaray accuses Samsung and Intel of infringing by using Applied's Endura reactors—with a "pulsed DC power supply" and "narrow band-rejection filter"—to deposit TaN barrier layers to certain products: as to Intel, the Broadwell Processors, Ex. A to FAC at ¶ 26; and as to Samsung, the DDR4 SDRAM memory chips, Ex. B to FAC at ¶ 29. While

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*See* Herrgott Decl. ¶ 12; Greuter Decl. ¶ 11; Kim Decl. ¶ 16. ████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████

Further, Demaray's own allegations on the "narrow band-rejection filter" require it to be part of Applied's reactors. Demaray alleges the filter is necessary to protect the reactor's "pulsed DC power supply," Ex. A to FAC at ¶ 40, to prevent it from suffering damage and malfunctioning, Opp. at 4 (filter "allows the power sources to properly function" and "prevents damaging feedback to the pulsed DC power source"). Thus, according to Demaray's allegations, to function properly and allegedly perform the claimed methods, Applied's reactors ***must*** include the '276 patent's narrow band-rejection filter. Demaray is thus, in effect, alleging that Applied provides all components needed to directly infringe the asserted claims.[1]

---

[1] The only other conclusion of accepting Demaray's premise would be that Applied supplies reactors that allow damaging feedback to the power supply of the reactors that renders them unable to function properly. This runs counter to Demaray's allegation, for example, that Applied is a "Preferred Quality Supplier" to its customer. *See* Ex. A to FAC at ¶ 25.

1    Demaray suggests it is Applied's burden to prove it infringes. That is not the standard.[2]

2    ██████████████████████████████████████████████████████████

3    ████████████████████████████████ *See* Miller Decl. at ¶ 4. But rather than suing

4    Applied directly—████████████████████████████████████

5    Demaray's allegations—Demaray instead pursued a litigation strategy against downstream device

6    makers. The customer-suit complaints, however, cannot mask Demaray's underlying direct

7    infringement allegations against Applied when its allegations against Intel and Samsung rely

8    exclusively on Applied's products and materials, and allege—without any support—that two

9    unrelated entities implement the same alleged "configurations" of an Applied reactor ████

10   ████████████████████████████████████████████ *Id.*

11        Considering the exclusive focus on Applied's products and materials in Demaray's

12   complaints against Applied's customers, a controversy exists because there is a reasonable

13   potential Demaray could bring direct infringement claims against Applied. The potential for such

14   claims will continue until the controversy is resolved and this Court has jurisdiction to resolve

15   Applied's declaratory relief claim that it does not directly infringe the Asserted Patents through

16   its manufacture, sale, and/or use (*e.g.,* by testing) of Applied's Endura reactors.

17   **2.   Demaray's Allegations Establish a Reasonable Potential It Could Bring Inducement and Contributory Claims Against Applied**

18        Separately, the factual allegations in Demaray's customer-suit complaints establish a

19   reasonable potential that Demaray could bring claims of indirect infringement against Applied for

20   "provid[ing] its customers with the necessary components to infringe the [Asserted Patents] as

21   _____

22   [2] Demaray asserts that Applied's allegation that it <u>does not</u> infringe the Asserted Patents

23   somehow proves there is no controversy. *See* Opp. at 6–8. The law does not require an admission

24   of liability before a party has standing to contest a claim. No legal principles prevent Applied

25   from bringing a declaratory action for noninfringement while also denying that it infringes the

26   Asserted Patents. *See Arris Group, Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1380 (Fed. Cir.

27   2011); *Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 19-cv-03371-EMC, 2019 U.S. Dist.

28   LEXIS 194022, at *18 (N.D. Cal. Nov. 6, 2019).

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    well as the instruction manuals for using the components in an infringing manner." *DataTern*,

2    755 F.3d at 905; *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016).

3         Demaray alleges that Applied provides its customers with certain "application-specific

4    process kits" that allow them to "modif[y]" the reactors to fit their needs. Ex. A to FAC at ¶ 25.

5    Demaray could allege the various Applied product materials in Demaray's complaints provide

6    circumstantial evidence of the necessary *mens rea* to support an induced infringement claim: that

7    Applied encourages the configuration of its reactors in allegedly infringing ways. *See id*.

8         Likewise, there is a reasonable potential that Demaray could allege contributory

9    infringement against Applied: by supplying an apparatus for use in practicing a patented process

10   that is not a staple article of commerce suitable for substantial noninfringing use. First, Demaray

11   relies extensively on Applied's Endura reactors and Applied's product materials, website, and

12   literature to support its customer allegations of infringement. *See Arris*, 639 F.3d at 1378

13   ("[Patentee's] extensive focus on Arris' [] products in its infringement contentions implies that

14   Arris' products are being used as a 'material part' of the allegedly infringed invention[.]").

15        Second, while Demaray claims that Applied's reactors may have noninfringing uses, *see*

16   Demaray Decl. ¶ 12, Demaray's customer suits undermine these claims. Demaray has sued two of

17   the world's biggest chipmakers, both of which have been publicly described as Applied's

18   "biggest customers" or "main customers." *See* Exs. L and M to Supp. Lubarsky Decl. The target

19   of Demaray's accusations (using Applied's flexible configurations) demonstrates that any alleged

20   noninfringing uses of Applied's products outside the way the products are used by Applied's

21   biggest customers are not intended uses (if they are used at all). Therefore, Demaray's allegations

22   establish a reasonable potential Demaray could assert that the allegedly infringing configurations

23   and methods are the primary and substantial use, and that any noninfringing configurations are

24   occasional at best. *See Mass Eng. Des., Inc. v. Planar Sys.*, 426 F. Supp. 3d 680, 690-91 (D. Or.

25   2019). Further, according to Demaray, such noninfringing use results in damage to the power

26   supply and prevents it from functioning properly, Ex. A to FAC at ¶ 40; Opp. at 4, a result

27   Applied would presumably avoid based on Demaray's claims. *See Hoffmann-La Roche Inc. v.*

28   *Promega Corp.*, No. C-93-1748, 1994 U.S. Dist. LEXIS 10174, at *30 (N.D. Cal. June 13, 1994).

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    In sum, this Court has jurisdiction because Demaray's customer suits establish a

2    reasonable potential that Demaray could assert direct and indirect infringement against Applied.

3    **B.    The *Katz* Framework Applies to the Question of Whether to Issue a Preliminary Injunction—not *eBay's* Traditional Four-Part Test**

4
5    The Federal Circuit made clear in *Katz* that the traditional four-part injunction test, "which

6    was developed to test the grant of the requested remedy before the case has been tried on the

7    merits, does not apply to the different question of whether to enjoin the prosecution of concurrent

8    litigation." 909 F.2d at 1463. The latter queries whether the manufacturer's action will resolve

9    "major issues" in the customer suits, and the former queries several factors, including likelihood

10   of success and irreparable harm, which analyze the merits of the claims and the nature of the

11   commercial harm to the patentee. These factors are not relevant to the fundamentally separate

12   question of whether a customer suit should be enjoined while the manufacturer's suit proceeds.

13   Nevertheless, Demaray proceeds in its briefing with a square-peg-in-a-round-hole

14   approach by claiming the Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388

15   (2006), somehow overruled the *Katz* framework, thus requiring analysis of the traditional four-

16   part test. Opp. 10–11, 22–23. The *eBay* Court did no such thing. It overruled the Federal Circuit's

17   "general rule" that a permanent injunction should issue following a finding of infringement, and

18   held that courts should instead adhere to the traditional injunction test. 547 U.S. at 393–394.

19   The *eBay* Court did not address the *Katz* framework or even a procedural rule similar to it.

20   Indeed, district courts since *eBay* have confirmed that the *Katz* framework continues to govern the

21   distinct circumstance presented here. *RegenLab USA LLC v. Estar Techs. Ltd.*, No. 16-cv-8771,

22   2017 U.S. Dist. LEXIS 131495, at *6 n.3 (S.D.N.Y. Aug. 17, 2017) ("the Supreme Court [in

23   *eBay*] was not discussing *Katz* or a procedurally-similar case"); *cf. ProBatter Sports, LLC v.

24   Joyner Techs., Inc.*, 463 F. Supp. 2d 949, 955, n.8 (N.D. Iowa 2006) (holding the *Katz* framework

25   governs, and noting that "[o]ther circuit courts of appeal have similarly narrowed the inquiry in

26   the context of foreign antisuit injunctions") (collecting cases).

27   **C.    Applied's Noninfringement Claims of the Asserted Patents Will Be Dispositive of the Major Issues in the Customer Suits**

28   Applied's noninfringement claims will dispose of the primary infringement issues in the

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    customer suits. Applied, the manufacturer and supplier of the allegedly infringing reactors, has

2    the greater interest in litigating ahead of its customers, and doing so is the most efficient and cost-

3    effective way to dispose of all actions. It is for circumstances like this that the customer suit

4    exception exists: "This 'customer-suit' exception to the 'first-to-file' rule exists to avoid, if

5    possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally

6    the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365.[3]

7            Demaray's Opposition, attempts, but does not succeed in avoiding application of *Katz*.

8    First, Demaray suggests a customer's status as a "mere[] reseller" is a prerequisite for the

9    manufacturer's suit to take precedence. *See* Opp. at 16–17. It is not. While being a mere reseller

10   favors such a result, *see Tegic Communs. Corp. v. Bd. of Regents*, 458 F.3d 1335, 1343 (Fed. Cir.

11   2006), courts have consistently held that, outside of the "mere reseller" context, a manufacturer's

12   action takes precedence if the customer is accused of "ordinary use" of the manufacturer's

13   products. *See Cadence Design Sys. v. OEA Int'l, Inc.*, No. CV11-0713, 2011 U.S. Dist. LEXIS

14   106739, at *6 (N.D. Cal. Sep. 19, 2011) (quoting *Ricoh Co. Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d

15   554, 557 (D. Del. 2003)); *see also Gray Mfg. Co. v. Ashburn Volunteer Fire & Rescue Dep't*, No.

16   3:19-cv-801, 2020 U.S. Dist. LEXIS 145886, at *5 (E.D. Va. Aug. 12, 2020) (collecting cases).

17           Second, despite identifying ***only*** Applied's reactors in the complaints, Demaray asserts

18   without support that there *could be* other suppliers. Opp. at 19. It is Demaray's burden to

19   substantiate this claim. *Katz*, 909 F.2d at 1464 (rejecting patentee's argument that the customers

20   sell "infringing goods of several manufacturers," noting "this point was not substantiated").

21   _____

22   [3] Notably, Demaray never offered Applied a covenant not to sue. *See Bal Seal Eng'g, Inc. v.*

23   *Nelson Prods.*, 2016 U.S. Dist. LEXIS 195915, at *12 (C.D. Cal. Sep. 8, 2016) ("[A] refusal to

24   provide [a covenant not to sue] . . . adds more weight to the existence of an actual controversy.").

25   This is not surprising, because such a covenant would result in an effective license to Intel and

26   Samsung for their use of Applied's products, further narrowing (if not resolving) the disputes in

27   the customer suits. *See TransCore v. Elec. Trans. Consult. Corp.*, 563 F.3d 1271, 1276 (Fed. Cir.

28   2011) (difference between "covenant" and "license" "is only one of form, not substance").

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    Demaray has not done so. Demaray identifies a list of companies that manufacture PVD reactors

2    for the "semiconductor industry" at large, *id*. at 19–20, but none of these companies or their

3    reactors are identified in the customer-suit complaints. The cases Demaray cites involve

4    circumstances where it was established that other companies did in fact supply infringing

5    products to the customers (or where there was no suggestion either way). *See* Opp. at 19.

6    Conversely, here, Demaray only identifies Applied as a supplier of infringing reactors, and

7    neither Demaray's conclusory allegation (*i.e.*, "including, but not limited to"), nor Demaray's

8    identification of reactor suppliers *generally* in the semiconductor industry, raises a sufficient

9    inference that the customer suits involve anything other than Applied's reactors.

10          Third, Demaray argues this action cannot take precedence over the customer suits because

11    it does not currently include patent invalidity claims. Opp. at 18, 21. Demaray misstates the law.

12    The customer-suit rule does not require both infringement ***and*** invalidity claims in the

13    manufacturer's action. *See Nintendo*, 756 F.3d at 1365 (for customer-suit exception, manufacturer

14    suit takes precedence when "fil[ing] an action of noninfringement __or__ patent invalidity" (emphasis

15    added)); *Amazon.com, Inc. v. Corydoras Techs., LLC*, No. 1:19-cv-1095, 2020 U.S. Dist. LEXIS

16    57969, at *10 (W.D. Tex. Apr. 2, 2020) (customer-suit rule applicable where manufacturer's

17    action included only noninfringement, not invalidity). Moreover, Applied intends to file *inter*

18    *partes* review petitions in short order. Once filed, Applied will seek leave to assert invalidity to

19    both Asserted Patents. Thus, this action will also resolve the invalidity question presented in the

20    customer suits, and Intel and Samsung will agree to be bound by the invalidity claims as well.

21    Herrgott Decl. ¶ 13; Kim Decl. ¶ 7; Thompson Decl. ¶ 7; Dietz Decl. ¶ 7; Cross Decl. ¶ 7.

22          Fourth, contrary to Demaray's argument, even if the Court were only to have jurisdiction

23    over the indirect, but not the direct noninfringement claims, the *Katz* framework and the

24    customer-suit rule would still apply. While some courts have disfavored applying the customer

25    suit rule where the manufacturer's action only involves indirect infringement, *see* Opp. at 20,

26    "this is not a strict rule." *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 U.S.

27

28

Dist. LEXIS 36563, at *19 (N.D. Ill. Mar. 7, 2019).[4] Indeed, this action raises noninfringement claims on both the merits *and* based on license and assignment provisions (discussed *infra* II.D.), which will have the same (if not greater) effect as a finding of no direct infringement—disposing of this action and the customer suits in their entirety.

Finally, damages issues that remain (if any) after this action can be resolved in the customer suits in a more efficient manner than with multiple suits proceeding in parallel through claim construction, infringement, and invalidity challenges. *See Katz*, 909 F.2d at 1464; *see also ProBatter*, 463 F. Supp. 2d at 956.  In sum, the claims against Applied's customers will be most efficiently litigated first by Applied here in this District. Applied developed and manufactured the accused Endura reactors, Applied negotiated and performed the agreement containing Applied's license, and the assignment agreements relate to Applied's employees. Applied is the "true defendant" in this dispute, the majority of relevant and dispositive information bearing on the question of infringement in the customer suits is within Applied's—not Intel's or Samsung's— possession or control, and therefore *Katz* and its progeny show that Applied's action should take precedence over the customer suits, which should be stayed during the pendency of this action.

### D.    Applied's License and Assignment-Based Noninfringement Claims Will Resolve the Customer Suits

Demaray does not dispute that, if Applied prevails on either the license or the assignment-based noninfringement claims, such findings would not only dispose of this action entirely but it would also dispose of Demaray's suits against Intel and Samsung in their favor. *See* Mot. at 10. Further, even if the issues are resolved in Demaray's favor, their resolution will dispose of major defenses in the customer suits. *See* No. 6:20-cv-634, Dkt. No. 19 (sixth and eighth affirmative defenses); *see* No. 6:20-cv-636, Dkt. No. 21 (sixth and seventh affirmative defenses). While

---

[4] Demaray's argument that method claims weigh against giving preference to the manufacturer's suit is unsupported. Opp. at 20–21. The ultimate question is whether claims against the customer are based on "ordinary," not "peculiar[] use" of the product. *Compare Berkeley*IEOR*, 2019 U.S. Dist. LEXIS 36563, at *19–20 (ordinary), *with Mantissa Corp. v. Old Second Bancorp, Inc.*, 2018 U.S. Dist. LEXIS 103365, at *20–21 (N.D. Ill. June 20, 2018) (peculiar). *See* section II.A.2.

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

Applied believes a detailed merits discussion on the license and assignment-based noninfringement claims is premature, Applied responds below.

### 1.    The License Grant in the SRA Is Valid and Enforceable

The Sales and Relationship Agreement ("SRA")—an agreement negotiated at arms' length by sophisticated commercial entities—grants Applied a "non-exclusive, perpetual, royalty free license to any rights of Symmorphix under any patents . . . related to sputtered silicon deposition technology." *See* Ex. F to Lubarsky Decl. (SRA), document titled "Exhibit C," dated Jan. 27, 1999, at ¶ 3(b). Demaray does not dispute that the license grant encompasses the inventions claimed in the Asserted Patents. Applied holds a license to the Asserted Patents by virtue of the SRA, *see* FAC ¶ 59, and Applied's customers' use of Applied's products incorporates this license and is permitted. *Id.* Demaray does not argue the SRA or the license grant is invalid or otherwise unenforceable. This claim—which stands on its own—can dispose of both this action and the customer suits in their entirety.

### 2.    The Employee Assignment Provisions Are Valid and Enforceable

Separate from the license, the assignment-based noninfringement claims are also dispositive. Demaray contends the asserted assignment provisions are unenforceable under *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084 (N.D. Cal. 2009) ("*Advanced*"). Both the facts and jurisprudence are distinguishable. In *Advanced*, Applied moved to enjoin former Applied employees from using its confidential information to compete with Applied, and requested a judgment assigning full ownership over the patents at issue. *See* No. 7-cv-5248*,* FAC, Dkt. 31. Under those circumstances, the court found the assignment to be "a post-employment penalty that violates California public policy" because it "necessarily operates as a restriction on employee mobility." 630 F. Supp. 2d at 1090–91.

Here the opposite occurred: Applied Komatsu provided systems, facilities, and lab space to Symmorphix for it to <u>continue</u> developing technology the former employees had been working on at Applied Komatsu. And unlike in *Advanced*, Applied is not seeking to prevent Demaray, Symmorphix, or former employees from developing technology; nor is Applied seeking ownership rights. Rather, Applied only seeks a declaratory judgment of noninfringement based on

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    the assignment provisions. There are no employee mobility or anti-competitive concerns.

2         Moreover, the relevant precedent in this area of California law has evolved to where

3    *Advanced* is no longer correct. After *Advanced*, the Federal Circuit clarified the scope of Bus. &

4    Prof. Code § 16600, providing critical guidance and confirming the assignment provisions here

5    are valid and enforceable. *See Bd. of Trs. v. Roche Molecular Sy*s., 583 F.3d 832, 845 (Fed. Cir.

6    2009) ("*Roche*"). In *Roche*, Stanford argued that an assignment provision was void under § 16600

7    because the inventor conceived of the invention after leaving his previous employer. 583 F.3d at

8    845–46. The Federal Circuit rejected Stanford's arguments. First, the assignment provision did

9    not "restrain[]" the employee from "engaging in any profession," but, similar to the facts here, the

10   employee "continued his [] research at Stanford, publishing articles and using the knowledge he

11   obtained . . . to further the science behind the patents-in-suit." *Id*. at 845. Second, the Court held

12   that "California courts apply section 16600 to employment restrictions on departing employees,

13   not to patent assignments." *Id.* at 845 (emphasis added). As in *Roche*, Applied does not seek to

14   prevent anyone from engaging in their profession, but only to prevent Demaray from pursuing

15   claims against Applied and its customers foreclosed by patent assignment provisions.

16        Lab. Code § 2870 governs validity of employee "invention" assignment provisions, and

17   voids provisions where inventions were conceived on the employee's own time without using the

18   employer's information or equipment. Here, Mr. Narasimhan's agreement includes limitations

19   beyond those analyzed in *Advanced*, including express compliance with § 2870. *See* Ex. N to

20   Supp. Lubarsky Decl. Applied's compliance, which was not at issue in *Advanced*, resolves the

21   validity question in Applied's favor regardless of § 16600. In view of *Roche* and § 2870, the

22   provision should be construed to assign only what is permitted by law.

23        Following *Roche*, courts in California have upheld similar post-termination assignment

24   provisions. *See Whitewater W. Indus., Ltd. v. Alleshouse*, No. 17-cv-00501, 2019 U.S. Dist.

25   LEXIS 163168, at *22–23 (S.D. Cal. Mar. 26, 2019). Relying on *Roche*, the court found that the

26   provision did not result in a restraint of trade under § 16600: "the [a]greement does not restrain

27   [him] from engaging in the [] profession. It only requires him to assign inventions resulting from

28   his work at [the employer] or relating to [its] business at the time he was there." *Id*. at *24.

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1       Contrary to Demaray's conclusory assertion, Applied is not barred by collateral estoppel

2   from raising these issues as they are both factually and legally distinct from the issues presented

3   in *Advanced*, and regardless, *Advanced* is no longer the controlling precedent. *See USGA v.*

4   *Arroyo Software Corp.*, 69 Cal. App. 4th 607, 616 (1999) ("Collateral estoppel does not apply

5   where there are changed conditions or new facts which did not exist at the time of the prior

6   judgment, or where the previous decision was based on different substantive law."); *Valley View*

7   *Health Care, Inc. v. Chapman*, 992 F. Supp. 2d 1016, 1047 (E.D. Cal. 2014).

8       **E.    Demaray's Remaining Arguments Are Unavailing, but Rather Confirm the**
        **Customer Suits Should Be Enjoined Under *Katz***

9

10      Demaray's Opposition offers several additional flawed and misplaced arguments relating

11  to the *Katz* framework and the customer-suit rule.

12      **First to File/Customer Suit.** Demaray attempts to invoke the first-to-file rule, *see* Opp. at

13  15, but makes no attempt to distinguish *Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-

14  5933 CW, 2014 U.S. Dist. LEXIS 53757, at *31–32 (N.D. Cal. Apr. 17, 2014), which squarely

15  addresses the proper Federal Circuit approach to applying the first-to-file rule and the customer-

16  suit exception in a case where the patentee first sues a customer and the manufacturer promptly

17  files a declaratory action against the patentee. *See* Mot. at 15–16. Further, while Demaray cites to

18  a case applying the first-to-file rule in the context of "substantially similar" parties, Opp. at 15

19  (citing *Futurewei*), Demaray makes no attempt to show that Applied and its customers meet that

20  standard. Indeed, *Google* makes clear that a traditional supplier–customer relationship does not

21  comprise "substantially related" parties. *See* 2014 U.S. Dist. LEXIS 53757, at *31–32.

22      **Comparative Convenience.** Demaray argues the convenience factors cannot be

23  considered under *Katz*, claiming *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 736 (1st Cir.

24  1977) is not binding. Opp. at 24. However, the Federal Circuit has relied on *Codex* as precedent

25  in the customer-suit and injunction context, suggesting its holding is part of the Federal Circuit's

26  jurisprudence on these issues. *Katz*, 909 F.2d at 1463–64; *Kahn v. GMC*, 889 F.2d 1078, 1081

27  (Fed. Cir. 1989); *Nintendo*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). Demaray also argues *Codex*

28  only considered the convenience factors "in evaluating venue," Opp. at 24, and not on whether to

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    enjoin the customer suit. Not so. In *Codex*, on appeal, the only question was whether the

2    injunction denial should be reversed—and, as part of that analysis, the court considered the

3    comparative convenience of each forum. *Id*. at 737–40. Indeed, the Federal Circuit considers

4    comparative convenience in analyzing whether to stay a customer suit in favor of a

5    manufacturer's action, *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014), and it has noted

6    "[t]here is no functional distinction between a stay of the first-filed suit and an injunction against

7    prosecution of the first-filed suit," *Kahn*, 889 F.2d at 1080.

8         Moreover, Demaray relies on *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir.

9    1982), to argue that only that only the first-filed court can analyze comparative convenience. Opp.

10   24. Demaray, however, conveniently omits the applicable exception articulated in *Pacesetter*:

11   "where the patentee and the customer are involved in one action and the patentee and the

12   manufacturer are involved in a second action." 678 F.2d at 93, 96. Thus, the correct approach is

13   for this Court to analyze the comparative convenience of each forum.

14        Here, Demaray does not reasonably dispute that the comparative convenience clearly

15   favors this forum. First, Demaray does not dispute that the vast majority of evidence and

16   witnesses are located in this District, including Demaray (and its relevant evidence and

17   witnesses), Applied (and its relevant evidence and witnesses), and two of the named inventors of

18   the Asserted Patents including Mr. Demaray and the prosecuting attorney (and their relevant

19   evidence). Nor does Demaray dispute that the SRA between Symmorphix and Applied Komatsu

20   was negotiated, executed, and performed in this District, Mot. at 18, thus further bolstering this

21   District's localized interest in this case. Moreover, Demaray made its patent license offer to

22   Applied here in this District. Ex. K to Supp. Lubarsky Decl. Further, as discussed in section

23   II.D.2, questions of California employment law may be independently dispositive of all actions.

24        Demaray points to Applied's Austin facilities, Opp. at 24, but fails to show they have any

25   relevant witnesses or documents. ████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████ *See* Miller Decl. at ¶¶ 6–7. It would be more convenient for

28   Applied to litigate in this District. *Id*. at ¶ 7. Further, Demaray misleadingly identifies Intel's

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    Austin-based "research and development center." Opp. at 24. ████████████████

2    ████████████████████████████████████████████████████████████████

3    Herrgott Decl. ¶¶ 9–10. ████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████ *id*. at ¶¶ 9, 11

6         Finally, Demaray asserts that Samsung's only <u>domestic</u> fab is located in Austin. Opp. at

7    24. However, as to the only identified semiconductor products that Demaray alleges are made

8    with the allegedly infringing reactors—the "DDR4 SDRAM," *see* Ex. B to FAC ¶¶ 29, 34, 53, 54,

9    57, 61, 64, 67, 69—████████████████████████████████ Kim Decl. ¶ 18.

10   ████████████████████████████████████████████████████████████

11   ████████████ Greuter Decl. ¶¶ 12–14. Moreover, Demaray's complaint against Samsung

12   makes allegations regarding multiple pre-suit meetings between Demaray and Samsung that took

13   place in San Jose and Mountain View, *see* Ex. B to FAC ¶ 71—thus, further supporting the

14   centrality of this District with respect to both this action and the customer suits.

15       **Comity.** Finally Demaray does not raise any comity issues that are not already

16   contemplated by the *Katz* framework, which favors a temporary halt of a customer suit while the

17   manufacturer's action proceeds. Also, contrary to Demaray's telling, the court in *Amazon v.*

18   *Corydoras* deny an injunction due to "<u>general</u> concerns regarding comity," Opp. at n.4 (emphasis

19   added), but rather the <u>specific</u> concern that the first-filed court already made a ruling on the exact

20   same issue, and therefore principles of comity advised against conflicting with that ruling. 2020

21   U.S. Dist. LEXIS 57969, at *10–11. Had the first-filed court not issued that ruling, the second-

22   filed court would have granted the injunction. *See id*. at 10 ("as the Federal Circuit held in *Katz*,

23   the litigation brought by Amazon should take precedence over [the] customer suit"). Demaray

24   does not dispute that the comity concerns present in *Amazon* are not present here; rather, the

25   customer suits are in their infancy, and the court has not taken any substantive action in the cases.

26   **III.    <u>CONCLUSION</u>**

27       In sum, a proper application of the *Katz* framework favors a temporary halt of Demaray's

28   customer suits during the pendency of this action. This Motion should be granted.

- 15 -

APPLIED'S REPLY ISO MOTION FOR
PRELIMINARY INJUNCTION

1    DATED:  October 9, 2020                    YAR R. CHAIKOVSKY
                                                PAUL HASTINGS LLP
2

3                                               By: */s/ Yar R. Chaikovsky*
                                                            YAR R. CHAIKOVSKY
4
                                                Attorneys for Plaintiff
5                                               APPLIED MATERIALS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLIED'S REPLY ISO MOTION FOR
                                                PRELIMINARY INJUNCTION