UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DEMARAY LLC,<br><br>Defendant. | Case No. 5:20-cv-05676-EJD<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 14 |

Plaintiff Applied Materials, Inc. ("Applied") initiated this lawsuit against Defendant Demaray LLC (Demaray) seeking declaratory judgment of non-infringement of two of Demaray's patents—(i) U.S. Patent No. 7,544,276 (hereafter "276") and (ii) U.S. Patent No. 7,3381,657 (hereafter "657") (collectively the "Asserted Patents"). Now, before the Court is Applied's motion to enjoin Demaray from litigating certain patent claims in customer suits in the Western District of Texas. Dkt. No. 14. Having considered the record, the parties' submission, and the relevant law, the Court finds that it does not have jurisdiction over Applied's claims under the Declaratory Judgment Act.[1] The Court therefore **DENIES** Applied's motion for preliminary

---

[1] On October 16, 2020, Demaray filed "Demaray LLC's Objection to Applied Materials' Reply Evidence." *See* Dkt. No. 29. Local Rule 7-3(d) prohibits a party from filing additional memoranda, papers, or letters once a reply is filed without court approval unless new evidence has been submitted in the reply. Civ. L.R. 7-3(d)(1). If new evidence is submitted with the reply, the party may file an objection to the reply evidence, "which may not exceed 5 pages of text, stating its objections to the new evidence, [and] which may not include further argument on the motion." *Id.*

The Court has the discretion to consider new evidence presented on reply, particularly if the new evidence appears to be a reasonable response to the opposition. *See Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, No. 18-CV-01444-EDL, 2018 WL 4203801, at *3 (N.D. Cal. June 27, 2018) (declining to strike reply declaration because the new evidence in the declaration was

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
1

injunction.

## I. BACKGROUND

The Asserted Patents claim a specific reactor configuration and method for the deposition of thin layer films capable of being used during the fabrication of semiconductors. At several points during the manufacturing of semiconductor devices, thin layer films composed of materials including metals such as titanium and tantalum, are deposited onto different types of substrates in a technique known as magnetron sputtering. Demaray's patented method and reactor configuration involves combining techniques known as bias pulsed DC ("BPDC") sputtering, reactive magnetic sputtering ("RMS"), and the incorporation of a narrow band rejection filter situated between a reactor's DC power source and the reactor's target area. Applied develops and manufactures technology and products used for semiconductor fabrication, including a line of reactors used for magnetron sputtering. This declaratory judgment action stems from Demaray's allegations that Intel Corporation ("Intel") and Samsung Electronics Co. Ltd. ("Samsung"), two of Applied's customers, have infringed Demaray's 276 patent by configuring reactors, such as Applied's Endura product line reactors in an infringing manner. In addition, Demaray asserts that Intel and Samsung have infringed Demaray's 657 patent protecting a magnetron sputtering method used to deposit thin film layers in the fabrication of some of their semiconductor products. *See* First Amended Complaint for Declaratory Judgment ("FAC"), Dkt. No. 13 ¶ 1.

On July 14, 2020, Demaray filed separate actions in the Western District of Texas against Intel, Civil Action No. 6:20-cv-634-ADA, and Samsung, Civil Action No. 6:20-cv-636-ADA. (collectively "WDTX Actions"). *See* FAC ¶ 1; *see also* FAC, Ex. A, Dkt. No. 13-1, *Demaray LLC v. Intel Corp.*, (W.D. Tex. No. 6:20-cv-634-ADA filed July 14, 2020) (hereinafter, "Intel Compl."); FAC, Ex. B, Dkt. No. 13-2, *Demaray v. Samsung Electronics Co., Ltd. (A Korean Company) et al*, (W.D. Tex. No. 6:20-cv-636-ADA filed July 14, 2020) (hereinafter, "Samsung

---

"filed to respond to Plaintiff's opposition and is consistent with the evidence and arguments presented in the original motion"). The court exercises its discretion and considers Applied's new evidence because it responds to Applied's opposition and is consistent with the arguments and evidence presented in the moving papers.

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
2

Compl.").[2]  In the WDTX Actions, Demaray cites materials from Applied's website including a brochure for the Endura product line, an article from the Nanochip Technical Journal discussing reactive sputtering and tantalum deposition chambers, and a presentation on one of Applied's reactors, the Endura Cirrus HTX TiN System.  Intel Compl. ¶ 25; Samsung Compl. ¶ 28.  The WDTX Actions do not name Applied as a defendant.

On August 30, 2020, Applied filed a declaratory judgement action against Demaray, seeking a declaration that Applied's products do not infringe the Asserted Patents.  *See* Complaint, Dkt. No. 1.; *see also* FAC ¶ 2.  Additionally, Applied is seeking (1) a declaration that Applied's products do not infringe the Asserted Patents because the rights of a named inventor in the Asserted Patents were assigned to Applied by his employment agreement with Applied; (2) a declaration that Applied's products do not infringe because Applied holds a license to the Asserted Patents based on a license agreement between Applied's affiliate and Demaray's predecessor company; or alternatively (3) a declaration that Applied's products do not infringe because the rights of one or more of the named inventors to the Asserted Patents were assigned to Applied's affiliate by their employment agreement, making the affiliate at least a co-owner of the Asserted Patents.  *See* FAC ¶ 2.  On September 4, 2020, Applied filed its motion for preliminary injunction to enjoin Demaray from proceeding with its Western District of Texas actions against Intel and Samsung.  Demaray has filed its opposition ("Opp."), to which Applied has replied ("Reply").  *See* Dkt. Nos. 23, 28.

## II.  LEGAL STANDARDS

Because the Court's jurisdiction in the instant matter is based on the United States Patent Act, 28 U.S.C. § 1338, the Court applies the law of the United States Court of Appeals for the Federal Circuit.  *See* 28 U.S.C. § 1295(a)(1) (providing that the United States Court of Appeals for

---

[2] A court may consider certain materials such as "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Court will take judicial notice of the Western District of Texas complaints and publicly available docket entries in those cases.  *See id.* (facts are judicially noticeable if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.").

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
3

the Federal Circuit has exclusive jurisdiction over any appeal from a district court of the United States "in any civil action arising under . . . any Act of Congress relating to patents. . . ."). Furthermore, the Federal Circuit has held "that injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004).

### III.   DISCUSSSION

#### A.   Applied Has Not Established the Existence of an "Actual Controversy" Between Applied and Demaray

As a threshold issue, "when ruling on a motion for a preliminary injunction, this Court must consider whether it has subject matter jurisdiction. . . ." *Native Fed'n of Madre De Dios River & Tributaries v. Bozovich Timber Prod., Inc.*, 491 F. Supp. 2d 1174, 1180 (2007) (citing *U.S. Ass'n of Importers of Textiles and Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005). In the instant case, Demaray argues that this Court lacks subject matter jurisdiction over Applied's claim for declaratory relief because (1) such relief may be awarded only where there is a case or controversy and (2) based on the allegations in the FAC, there is no case or controversy. Applied contends that there is an Article III case or controversy because (i) Demaray "could just as easily have asserted a claim of direct infringement against [Applied], based on the same underlying circumstances in the customer suit", *Microsoft Corp. v. GeoTag, Inc.*, No. CV 11-175-RGA, 2014 WL 4312167, at *2 (D. Del. Aug. 29, 2014), and (ii) the very nature of Demaray's allegations against Samsung and Intel suggest that there is a "reasonable potential that [sic] a claim [of induced or contributory infringement] could be brought" against Applied. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).

##### i.   Applied Has Failed to Allege that Demaray Engaged in Affirmative Acts Directed at Applied

The Declaratory Judgment Act allows potential infringers to bring claims against patent holders, but only if there is an actual case or controversy between the parties. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1327-28 (Fed. Cir. 2012). To satisfy Article III's

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
4

standing requirements, a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), *reversed-in-part on other grounds by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013).  An "adverse legal interest" requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring.  *See Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011).

The Federal Circuit has held that a declaratory judgment plaintiff must allege "(1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity."  *Matthews Int'l Corp.*, 695 F.3d at 1327.  To find an affirmative act, "more is required than 'a communication from a patent owner to another party merely, identifying its patent and the other party's product line.'"  *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-79 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)).  On the other end of the spectrum is an explicit infringement allegation, which shows "'there is, necessarily, a case or controversy adequate to support declaratory judgment jurisdiction.'"  *See Hewlett-Packard Co.*, 587 F.3d at 1362 (quoting *Cardinal Chem. Co. v. Morton Int'l*, *Inc.*, 508 U.S. 83, 96 (1993)).  The factual scenarios that fall in between require case-by-case analysis, and the objective actions of the patentee are the subject of that inquiry.  *See 3M Co.*, 673 F.3d at 1379; *Hewlett-Packard Co.*, 587 F.3d at 1363.  The patentee need not explicitly threaten to sue or demand a license, but its actions must give reason to believe that it is asserting its rights under the patents.  *See Hewlett-Packard Co.*, 587 F.3d at 1362-63.

Here, Applied contends that Demaray's own actions provide evidentiary support that a controversy exists because Demaray previously offered Applied the opportunity to license the Asserted Patents in 2015.  Reply at 2; *see also* Supplemental Declaration of Boris Lubarasky ("Lubarasky Decl."), Ex. K, Dkt. No. 28-2.  In analyzing affirmative acts, courts consider

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
5

numerous factors and look at the parties' conduct and interactions as a whole. *See ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1087–88 (N.D. Cal. 2013); *Akeena Solar, Inc. v. Zep Solar Inc.*, No. C-09-05040 JSW, 2010 WL 519838, at *4 (N.D. Cal. Feb. 9, 2010). As is relevant here, courts consider the strength of language used in the parties' communications, the extent of infringement analysis done by the patentee, whether the patentee imposed a deadline to accept the license offer, the patentee's history of enforcement, whether the patentee has identified specific patents and products, and the time that has passed since the infringement allegations. *See ActiveVideo Networks, Inc.*, 975 F. Supp. 2d at 1087–88.

The facts put forth by Applied do not establish that there is a "substantial controversy" between the parties that is "of sufficient immediacy and reality. . . ." *See Medimmune*, 549 U.S. at 127. In August 2015, Demaray informed Applied by email that it was offering a license to the Asserted Patents as well as several other patents and technology. *See* Lubarasky Decl., Ex. K. Demaray did not impose a deadline on Applied for a response to the license offer. Furthermore, in the 2015 email, Demaray did not directly or implicitly suggest that any Applied products infringed on Demaray's patents nor did Demaray assert the patents as "relevant" to Applied's specific products. *Cf. Hewlett-Packard Co.*, 587 F.3d at 1363 (finding under the totality of the circumstances that, "it was not unreasonable for HP to interpret . . . letters as implicitly asserting [patent] rights" where patentee in part asserted a patent as relevant to the other party's specific product line). There is no indication Demaray has ever made any infringement allegations against Applied. Applied has also not presented evidence that it had any further interaction with Demaray concerning patent licensing after 2015 or that Demaray attempted to assert its patent rights against Applied in a different way. Given the general nature of the communication presented by Applied, "the majority of the factors considered by courts weigh against finding standing" to seek declaratory relief here. *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *11 (N.D. Cal. Jan. 17, 2013).

> ii. **There is Not an Actual Controversy Applied Might be Liable for Direct Infringement**

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
6

Moreover, the WDTX Actions between Demaray and Applied's customers, Intel and Samsung, do not give rise to an actual controversy as to whether Applied might be liable for direct patent infringement. Pursuant to § 271(a) of the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In the WDTX Actions, Demaray has accused Applied's customers, Intel and Samsung, of directly infringing configuration and method claims of the Asserted Patents; Demaray alleges that Intel and Samsung are in violation of § 271(a) of the Patent Act since each has infringed and unless enjoined will continue to infringe patent claims by "making, using, or offering to sell" the patented inventions at issue. Intel Compl. ¶¶ 22, 47; Samsung Compl. ¶¶ 25, 50.

More specifically, Demaray's claims are predicated on Intel and Samsung "configur[ing] RMS reactors, including, but not limited to reactors in the Endura product line from Applied Materials, Inc. . . . for deposition of layers . . . in its semiconductor products." Intel Compl. ¶ 25; Samsung Compl. ¶ 28. In particular, Demaray alleges Intel and Samsung configure the reactors such that they are comprised of a pulsed DC power supply coupled to the target area, a RF bias power supply coupled to the substrate, and a narrow band rejection filter placed between the DC power supply and the target area in order to deposit the thin layer films in its semiconductor products. Intel Compl. ¶¶ 33, 36, 39; Samsung Compl. ¶¶ 36, 39, 42.

Applied argues that Demaray's "exclusive identification" of its Endura reactors in the WDTX Actions, and reliance on Applied's publications, website, and screenshots of its reactors created an implied assertion of infringement against Applied. *See* Reply at 3. Moreover, Applied contends that because Demaray's allegations concerning Intel's and Samsung's configurations lack citation to any evidence revealing who performs the configuration, the implied assertion is that Applied's reactors necessarily or inherently feature these configurations. *Id*. at 3-4. Thus, according to Applied, Demaray's allegations establish a reasonable potential that Demaray could bring direct infringement claims against Applied. The Court is not convinced.

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
7

The Applied publications Demaray references do not discuss the specific configuration or method covered under Demaray's Asserted Patents. *See* Intel Compl., Ex. No. 3-5; Samsung Compl., Ex. No. 3-5. Instead, the Applied publications cover general information and features of Applied's reactors, and their ability to be utilized in the reactive sputtering process. For Demaray's accusations against Intel and Samsung to give rise to a declaratory judgment claim regarding direct non-infringement of the Asserted Patents, the facts alleged in the complaints and the documents referenced therein must imply that Applied itself may be liable for direct infringement. Although Applied is a supplier of the reactors capable of this configuration and deposition method, Demaray does not allege in the WDTX Actions that Applied itself configures the reactors or promotes the patented configuration and method. *See generally* Intel Compl.; Samsung Compl. Without more, Applied cannot be held liable for direct infringement. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) (holding that "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing the use."); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) (holding that "[t]he sale of [an apparatus capable of performing a claimed process is] not a direct infringement because a method or process claim is directly infringed only when the process is performed"). Accordingly, Applied has failed to allege an actual controversy with respect to direct infringement of Demaray's patents. *See MedImmune, Inc.*, 549 U.S. at 127.

### iii. There is Not an Actual Controversy Applied Might be Liable for Indirect Infringement

"Where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Group, Inc.*, 639 F.3d at 1375. In the instant case, (a) is not applicable. There is nothing in the record before the Court to suggest that Applied has indemnification agreements with its customers

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
8

or that indemnification would otherwise be required as a matter of law.  *See Activevideo Networks, Inc.*, 975 F. Supp. at 1095 (asking whether there is an obligation to indemnify – e.g., under a contract or as a matter of law); *see also, e.g., Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 WL 4915847, at *5 (N.D. Cal. Oct. 17, 2011) (stating that "Proofpoint has not alleged the existence of a valid [indemnification] agreement nor described its supposed obligations; it has simply indicated that the Texas Action [against its customers] has spawned indemnity 'requests' " but, "[w]ithout more, allegations of indemnity requests are not enough to find a 'substantial controversy . . . of sufficient immediacy and reality'").

Because (a) does not apply, the Court must determine whether there is a controversy between Applied and Demaray as to Applied's liability for indirect infringement based on the alleged acts of direct infringement by its customers.  Here, the Court must bear in mind that Applied does not have to definitively show that it is liable for indirect infringement.  *See Arris Group, Inc.*, 639 F.3d at 1380 (rejecting declaratory judgment defendant's argument that the declaratory judgment plaintiff has the burden of presenting evidence that its actions indirectly infringe; "the very purpose for an accused infringer to bring a declaratory judgment action is to seek a judicial determination that a coercive claim by the patent holder would not succeed on the merits") (emphasis omitted).  However, Applied must show that there is "at least a *reasonable potential* that . . . a claim [for indirect infringement] could be brought."  *Microsoft Corp.*, 755 F.3d at 904-05 (emphasis added).

Contributory infringement under 35 U.S.C. § 271(c) occurs if a party sells or offers to sell a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such a patent." *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).  Induced infringement, on the other hand, requires a showing that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.  35 U.S.C. § 271(b); *see DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
9

Cir. 2006). Demaray argues that Applied has not alleged that it supplies the "necessary components" for infringement such as reactors with, for example, a narrow band-rejection filter. Opp. at 8. Demaray also contends that Applied has not sufficiently pled any facts suggesting its reactors have no substantial non-infringing uses or that Applied could be found to induce infringement. *Id*.

Conversely, Applied contends that the factual allegations in Demaray's WDTX Actions establish a reasonable potential Demaray could bring claims of indirect infringement against Applied. First, Applied argues that Demaray's extensive reliance on Applied's Endura reactors and Applied's product materials, website, and literature to support its actions against Intel and Samsung implies that its products are being used as a material part in the customer's infringing activity. *See* Reply at 6. Applied also contends that since Demaray has brought suit against Intel and Samsung, two of the world's biggest chipmakers and two companies described as Applied's biggest customers, any alleged non-infringing uses of Applied's products outside the way the products are used by Samsung and Intel are not intended uses and in some instances can also result in damage to features of Applied's products. *Id*. Thus, according to Applied, there is a reasonable potential that Demaray could assert the allegedly infringing configuration and method are the primary and substantial use. *Id*. Additionally, Applied argues that allegations claiming it provides its customers with "application-specific process kits" that allow users to modify the reactors to fit their needs, raise the reasonable potential that Demaray could in turn bring claims for induced infringement against Applied.

However, the WDTX Actions and other record evidence do not establish a reasonable potential that Demaray could raise an indirect infringement claim against Applied. In *Arris Group Inc. v. British Telecommunications PLC*, the manufacturer and supplier of equipment used in Voice over Internet Protocol (VoIP) telephone services, sued British Telecommunications ("BT") following BT's accusation that the supplier's customer (a telecommunications network provider) infringed BT's patents. Although BT never explicitly accused the supplier of infringement, the supplier's products were central to BT's infringement contentions. *Arris Group, Inc.*, 639 F.3d at

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
10

1377. The court found that BT had accused Arris' customer Cable One of direct infringement of various system and method claims. The court then provided a detailed analysis of BT's 118–page presentation of its infringement contentions, pointing to the many instances of how BT singled out Arris' products used in Cable One's network, including multiple claim tables purporting to match components of Cable One's network to elements of the system/method claims of the patents-in-suit. The court emphasized that on 26 of those 118 pages, Arris was specifically referenced by name, or its products were identified by brand name and model, or its product literature was copied from its website for illustrative effect. *Id*. at 1376–77. The court emphasized that BT's presentation made clear that Cable One's use of specific Arris products was central to BT's infringement contentions, and that for many of the claims, BT asserted that virtually all the claimed system's elements or method steps were practiced by the specific Arris products used in Cable One's network. *Id*. at 1377–78.

Here, there is no evidence apparent to the Court that Demaray provides a lengthy presentation of infringement contentions in the WDTX Actions that use of Applied's reactors is central to Demaray's infringement claims against Intel and Samsung. As discussed above, it is true that Demaray referred to Applied's Endura reactors and publications wherein the capabilities of Applied's reactors were discussed. However, the Applied publications cover general information and features of Applied's reactors and their reactive magnetron sputtering capabilities including the deposition of tantalum (TaN) and titanium (TiN) layers. *See* Intel Compl., Ex. No. 3-5; Samsung Compl., Ex. No. 3-5. Thus, at this stage in the litigation, the Court sees no way to tell definitively whether the references to Applied's Endura reactors are intended as required parts of the accused configurations and methods, or whether they are simply offered as illustrations or as part of the background of the accused reactor configuration and method.

Furthermore, contrary to Applied's contention, the allegations in Demaray's customer actions do not imply that any non-infringing use of Applied products outside the way the products are used by Intel and Samsung are not intended uses. Demaray's claims focus on one configuration and one method able to be performed on reactors like those manufactured by

Case No.: 5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
11

1   Applied. The claims do not speak to the reactors themselves or many other non-infringing uses
2   described in Applied's publications. *See generally* Intel Compl.; Samsung Compl. As Applied
3   has not alleged its reactors could not be used without infringing the Asserted Patents, there is no
4   indication that Applied contributed to the alleged infringement by its customers. *See Ours Tech.,*
5   *Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 839 (N.D. Cal. 2009) ("The Federal Circuit
6   held there was no indication that Microchip had contributed to or induced infringement by its
7   customers, because there was no evidence that Microchip's technology could not be used without
8   infringing Chamberlain's patent or that Microchip had the required level of intent to cause and
9   encourage the alleged infringement.") (citing *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441
10  F.3d 936, 944 (Fed. Cir. 2006)).

11  Moreover, the "application-specific process kits" that Applied provides its customer with
12  do not suggest that Applied had the requisite knowledge or intent for indirect infringement. *Id*.
13  Demaray refers to the process kits when discussing how reactors, such as Applied's Endura
14  reactors, can be modified to allow for the deposition of specific material layers including TaN
15  barrier layers and TiN hardmask layers. *See* Intel Compl. ¶ 25, Samsung Compl. ¶ 28. There is
16  no allegation made in the WDTX Actions that suggest the "application-specific process kits" also
17  concern the configuration and method claims related to Demaray's Asserted Patents. Thus, on
18  these facts, the Court cannot find that there is a "controversy between the patentee and the supplier
19  as to the supplier's liability for induced . . . infringement." *Arris Group, Inc.*, 639 F.3d at 1375.

20  Despite Demaray's WDTX Actions and the evidence put forth by Applied, Demaray's
21  alleged actions are not indicative of "adverse legal interests" as to Applied. *See MedImmune, Inc.*,
22  549 U.S. at 127. Applied has not shown that a "substantial controversy" that is "of sufficient
23  immediacy and reality" exists between itself and Demaray. *Id*.

## IV.  CONCLUSION

25  For the forgoing reasons, the Court does not have subject matter jurisdiction over
26  Applied's action for declaratory relief. Thus, the Court **DENIES** Applied's motion to enjoin the
27  Western District of Texas Actions.

Case No.:   5:20-cv-05676-EJD
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
12

**IT IS SO ORDERED.**

Dated: December 23, 2020

EDWARD J. DAVILA
United States District Judge